STATE, EX REL. WILLIAM GANTZ ET AL., APPELLANTS, V. DRAINAGE DISTRICT ET AL., APPELLEES.

FILED DECEMBER 19, 1916.   No. 19646.

1. Statutes: TITLE OF ACT: VALIDITY. The title of the act (Laws 1911, ch. 145), "An act to amend section fifteen (15), article five (5), chapter eighty-nine (89) of the Compiled Statutes of Nebraska 1909, relating to drainage districts, and to add additional sections to said law, and to repeal said section fifteen (15), as heretofore existing," is broad enough to admit of legislation germane to the subject-matter of the act amended, and not inconsistent with the provisions of that act.

2. ————: ————: ————. The section numbered 44 in this act of 1911 (Rev. St. 1913, sec. 1914) is germane to the original act (Laws 1907, ch. 153), and is not inconsistent with section 20 of the original act, and is not unconstitutional.

3. Drainage Districts: ORGANIZATION: ELECTIONS. Under section 1872, Rev. St. 1913, "Any corporation, public, private, or municipal, owning or having an easement in any land or lot, may vote at such election, the same as an individual may." It was not intended to allow double representation of any part of the lands in the district. The easement for which votes may be cast must be of a substantial nature, analogous to ownership. It must include possession under a record right. Landowners cannot be allowed to represent in the election the acres of land lying in a highway which is regularly established.

4. ————: ————: ————. Exclusive possession and a record right of possession and use of the land indefinitely is an easement equivalent to ownership for the purpose of this statute.

5. ————: ————: ————: RATIFICATION. If parties who assume to vote for a railroad company or for a county or township are not formally authorized, their acts may afterwards be ratified by the proper authorities. In an action in which the public authorities represented by such agents are not parties, a general allegation that such agents "were not authorized" pleads only a conclusion.

6. Quo Warranto: SCOPE OF STATUTE. *Quo warranto* under our statute (Rev. St. 1913, sec. 8328) is intended to prevent the exercise of powers that are not conferred by law, and is not ordinarily available to regulate the manner of exercising those powers.

7. Drainage Districts: ORGANIZATION: QUO WARRANTO. If the election held under section 1914, Rev. St. 1913, results in rejecting the prop-

100 Neb.—40

osition to proceed with the work under the plans and details proposed, the directors have no power to proceed further to carry out those plans and details, and *quo warranto* is the proper remedy to test the result of such election.

APPEAL from the district court for Merrick county: FREDERICK W. BUTTON, JUDGE. *Reversed.*

*Elmer E. Ross* and *Prince & Prince,* for appellants.

*H. M. Morse* and *Martin & Bockes, contra.*

SEDGWICK, J.

A petition was filed with the board of supervisors of Merrick county for the formation of a drainage district in that county under the provisions of article V, ch. 19, Rev. St. 1913. The board of supervisors having acted upon the petition as the statute contemplates, an election was called, which resulted in favor of the formation of the district and the election of a board of directors, who duly qualified. The board of directors then caused plans and specifications to be made for the construction of the drainage ditches, and estimated that the cost thereof would be $16,698. Thereupon an election was called under section 1914, Rev. St. 1913, to determine the question of proceeding with the work and incurring the necessary expense thereof. The election was held, and it was declared by the canvassing board that the result of the election was in favor of proceeding with the proposed plan of drainage. Whereupon this action in *quo warranto* was brought in the district court for Merrick county against the drainage district and the directors thereof to require the directors to answer "by what authority or warrant they claim to proceed further in the premises in the prosecution of said enterprise," and for a judgment that the election so held "resulted in the defeat of said proposition." The prayer of the petition continued: "And that it be further adjudged by the court that the said board of directors have no further authority to proceed except to certify a tax levy

to pay the necessary expenses incurred up to and including said election." The defendants filed a general demurrer to the petition, which was sustained, and the action dismissed, and the relator has appealed. It is contended that *quo warranto* is not the proper remedy in such case, and that section 1914 is unconstitutional and void.

1. The petition, after relating the facts above recited, alleges that the canvassing board of the election found that the total number of the votes cast was 9,132, and that 4,703 votes were in favor. of proceeding with the proposed plan of drainage, and 4,429 votes were against so proceeding, and declared that the majority in favor of proceeding was 274. It was further alleged that 349 votes were cast in favor of the proposition as representing the number of acres of land in the right of way of the Union Pacific Railroad Company, that those votes were cast by the station agent at Clarks, and that he was not authorized to act for the railroad company in the premises, and that the total number of acres in the right of way of the railroad company, within said district, was not more than 150 acres, and that "all parties voting in favor of said proposition and having lands through which the right of way of said railroad company extended within said district, such party, or parties, voted the entire tract, or government subdivision, of land, and counted the acreage of the said right of way as the part of said subdivision, all of which they claimed to own, and cast such number of votes therefor as included the land therein owned by them and the said right of way; that approximately 100 votes were thus cast by said landowners in excess of the land actually owned by them, or in which they had any right, title, or interest entitling them to cast any vote or votes therefor, and were counted and included in the return favorable to said proposition." It it also alleged that 280 votes were cast in behalf of Merrick county as representing the number of acres of

land claimed to be within the highways in said district and used for road purposes; that the party who cast such votes was not authorized, and that the "owners of the real estate in said district voted the full number of acres of land by them respectively held without any deductions for road purposes as they were of right authorized to do, and that the total number of acres in said district used for road purposes and not voted by the owners did not exceed 50 acres."

If these allegations were true, there was no majority of legal votes in favor of the proposition, and the proposition was not adopted by the voters. The statute provides: "Any corporation, public, private, or municipal, owning or having an easement in any land or lot, may vote at such election, the same as an individual may." Rev. St. 1913, sec. 1872. The legislature took notice of the fact that the public highways and the right of way of transportation companies would be benefited by drainage. It was intended to make them responsible for their proportion of the expense of the improvement (Rev. St. 1913, sec. 1830), and to allow them a share with the individual landowners in such control as was given to interested parties. This purpose and the nature of these public interests affected must be considered in ascertaining the meaning of the language used by the legislature: "Any person may cast one vote on each proposition to be voted on for each acre of land or fraction thereof and for each platted lot which he may own or have an easement in, as shown by the official records of the county where the land or lots may be." Rev. St. 1913, sec. 1872. It was not intended by the use of the words "which he may own or have an easement in" to allow double representation of a part of the lands in the district. The ownership must be complete; that is, there must be title and the right of possession. The easement must be of the substantial nature of a railroad company's easement in its right of way, or of the public in the highways; that

is, it must include possession under a record right. Therefore landowners could not be allowed to represent in the election the acres of land lying in a highway which is regularly established, or in the right of way of the railroad company. While the public, or railroad company, does not have absolute title to such lands, it has exclusive possession, and has the record right to possession and use thereof indefinitely. This is an easement equivalent to ownership for the purposes of this statute.

The allegations that the "station agent at Clarks" was not authorized to cast the votes of the railroad company and that "the party who cast such votes" for the county were "not authorized" are not sufficiently pleaded to amount to more than conclusions of the pleader. If these parties were not formally authorized, their acts might afterwards be ratified, and there is no allegation that this was not done.

The drainage act under which these proceedings were had was enacted in 1907. Laws 1907, ch. 153. Section 1914, Rev. St. 1913, is a part of the act of 1911. Laws 1911, ch. 145. These two acts are incorporated in Rev. St. 1913, ch. 19, art. V, being sections 1866-1914. It is contended that section 1914 is unconstitutional, as it violates section 11, art. III, Const., which provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." The act of 1907 has a very comprehensive title: "An act to provide for drainage districts to drain wet land, * * * and the rights, obligations and powers of such corporations, * * * and defining the duties and powers of public officials." The amendatory act of 1911 is entitled "An act to amend section fifteen (15), article five (5), chapter eighty-nine (89), of the Compiled Statutes of Nebraska 1909 relating to drainage districts, and to add ad-

ditional sections to said law, and to repeal said section fifteen (15), as heretofore existing." Under this title any sections might· be added that were germane to the original title of the act. After amending section 15 and repealing the same, the act of 1911 adds several additional sections. One of these additional sections, which is numbered 44, provides: "In all districts hereafter organized the board of directors, having first adopted detailed plans and specifications of the work proposed to be done, and made an estimate of the total cost of such contemplated improvement, and filed said plans, specifications and estimated cost with the county clerk of the county having the largest area of land, shall then publish a notice once each week for three weeks in a newspaper in each county, of an election to vote on the question of proceeding with such work and incurring of the necessary liability, which election shall be held in all respects as other elections, provided for in this article." Section 20 of the original act of 1907 is a definition of the duties of the directors after the district has been regularly organized. It begins with the provision: "Said board of directors shall employ such engineer, surveyor and other help as they may deem necessary and proper and shall proceed according to their best judgment to carry out such work of the character mentioned in paragraph one hereof, as they deem for the public health, convenience and welfare." It is contended that this authorizes the board of directors to proceed with the work in accordance with the plans, specifications and details that they made out, and that as section 1914 limits the discretion of the board and requires that, after the plans and specifications and the details of the improvements are decided upon, the board cannot proceed to incur this expense without the consent of the taxpayers interested, it amounts to an amendment of section 20 of the original act, and, as it does not repeal that section, is a violation of the provision of the Constitution above quoted.

Section 20 of the original act of 1907 will not bear this construction. It appears from a reading of the whole section that it was not intended to provide at what point in the proceedings the board should contract for construction and repair, but to provide how the board should act in making such contracts and proceeding with the work. Section 1914 is a very important provision. If, after the district is organized, it develops that the expense of the drainage would be so great and the difficulties connected with it so important as to render the whole scheme unadvisable, the authority to determine that question is very important and should rest with the owners of the property upon whom these burdens would fall. This provision is not necessarily inconsistent with the section of the original act defining the duties of the directors, and should not for that reason be held unconstitutional.

2. The statute provides: "An information may be filed against any person unlawfully holding or exercising any public office or franchise within this state, or any office in any corporation created by the laws of this state, or when any public officer has done or suffered any act which works a forfeiture of his office, or when any persons act as a corporation within this state without being authorized by law, or if, being incorporated, they do or omit acts which amount to a surrender or forfeiture of their rights and privileges as a corporation, or when they exercise powers not conferred by law." Rev. St. 1913, sec. 8328.

It is said in *State v. Scott,* 70 Neb. 684: "Since the remedy by information in the nature of *quo warranto* is employed to test the actual right to an office or franchise, it seems that it cannot be extended to relieve against official misconduct which does not work a forfeiture of the office." It is contended that this is decisive of the case at bar. It is true that *quo warranto* under our statute is intended to prevent the exercise of powers that are not conferred by law, and is not ordi-

narily available to regulate the manner of exercising those powers. It is also manifest that, if the work is to be proceeded with, the directors are the proper officers to exercise such powers. Section 1914, Rev. St. 1913, provides: "If a majority of the votes at such election vote against proceeding and incurring the liability, then the board shall abandon the same, and shall thereupon certify to the county clerks a tax levy on all the tracts in the district by valuation, sufficient to pay all the liabilities of said district, and said levy shall be entered and collected as other general taxes, and used to pay said liabilities." If the allegations of this complaint are true, a majority of the votes were against proceeding further and incurring further liability. It was then the duty of the board of directors to abandon the project, and they were without power to proceed with the project and incur further expense. They were attempting then to exercise powers which they did not possess under the law, and an information in *quo warranto* was the proper remedy under the statute.

We conclude that the court erred in dismissing the action without investigation, and the judgment is reversed and the cause remanded for further proceedings.

REVERSED.