STATE, EX REL. WALTER R. JOHNSON, ATTORNEY GENERAL,
APPELLANT, V. CONSERVATIVE SAVINGS AND LOAN ASSOCIA-
TION ET AL., APPELLEES.

STATE, EX REL. WALTER R. JOHNSON, ATTORNEY GENERAL,
APPELLEE, V. CONSERVATIVE SAVINGS AND LOAN ASSOCIA-
TION ET AL., APPELLANTS.

11 N. W. (2d) 89

FILED SEPTEMBER 24, 1943. Nos. 31562, 31563.

(805)

*Walter R. Johnson, Attorney General,* and *Edwin Vail,* for relator.

*Wells, Martin & Lane,* for appellee Hill.

*Baird & Baird,* for Conservative Savings and Loan Association.

Heard before SIMMONS, C. J., PAINE, YEAGER and CHAPPELL, JJ., and TEWELL and LIGHTNER, District Judges.

SIMMONS, C. J.

The attorney general filed an information in *quo warranto* against the defendant a building and loan association and one Hill, charging the association with exercising powers not conferred by law by holding title and possession of certain real property, and seeking a cease and desist order against the association and the cancelation and termination of a lease against the defendant Hill. After issues were joined and trial had, the court granted the cease and desist order and denied jurisdiction to determine the issue as to the lease. From this judgment the attorney general and the association filed separate appeals. We affirm the judgment of the trial court.

Section 8-310, Comp. St. Supp. 1941, upon which this action is based, provides in part as follows: "Such associations may purchase, hold, lease, and convey real estate for the following purposes and no others: 1. Such as it may need to occupy as a place of business. * * * 4. * * * No such association shall hold the title and possession of any real estate longer than five years, unless authorized in writing by the Department of Banking so to do; provided, this restriction shall not apply to real estate held for the purpose first above named."

The defendant Conservative Savings and Loan Association is a corporation organized and existing under the laws of Nebraska. At all times mentioned herein its home office and place of business has been at 1614 Harney street, Oma-

ha, Nebraska, in property owned and modeled for its use as such place of business.

In 1916 defendant association purchased the fee simple title to property at Eighteenth and Farnam streets in Omaha, which we shall refer to as lot 8. In 1919 it solicited and entered into a 99-year lease with one Elizabeth Dufrene Hill whereby it secured possession of lot 7, adjoining its lot 8. Its purpose in acquiring these two properties was to build a large office building thereon, to be used in part as its place of business. The construction of this building was never undertaken. Because of economic conditions the building project was abandoned in 1926. The association made some effort in 1926 and following years to dispose of these properties, without success. The banking department of the state on a number of occasions called its attention to the fact that it was holding this property in violation of the statute and requested compliance with the act. No effective action was taken.

In February, 1934, the superintendent of banking, by letter, called the attention of the defendant association to the report of the examiners for December, 1933, to the statute and expressed the view that the Hill lease "be canceled and the adjacent property disposed of." Following that an officer of the defendant association undertook to persuade Mrs. Hill to cancel, modify or accept settlement on the Hill lease so that defendant association might be relieved of its burdens. An agreement was not reached. No further action was taken to comply with the statute and the request of the banking department. It appears that the association was willing to dispose of the two properties if satisfactory disposition could be made. The association appears to have desired to make lot 8 help it dispose of its leasehold on lot 7. That lease, however, was so termed that the association has not found any qualified party willing to assume the obligations of the lease so as to relieve the association of the obligations under it.

Mrs. Hill died March 2, 1935. The defendant Hill succeeded to her ownership of lot 7. The defendant associa-

tion paid the stipulated rental to Mrs. Hill during her lifetime, and continued to do so after her death down to the beginning of this action in November, 1939, when it ceased payments.

In September, 1939, in the examiner's report attention was again called to this property, the statute and "its elimination" was directed. In November, 1939, the attorney general brought this action in *quo warranto* alleging the securing of the title to these two lots, their holding in violation of the statute and that the association was "exercising powers not conferred by law and which are *ultra vires* of the corporation." He also alleged that Mrs. Hill, the lessor of lot 7, had only a life estate in the property; that the remainder in fee was vested in the defendant Hill; that notwithstanding Mrs. Hill's death, the defendant Hill claimed to be successor in interest under the lease; alleged the exacting terms of the lease; that the association had sought its termination and to be released therefrom; and that he joined the defendant Hill "for the purpose of determining the invalidity of said lease * * * that the same may be declared canceled and terminated." The attorney general prayed that the association be required to "cease and desist from exercising powers not conferred upon it by law and from holding title or possession to said real estate or any part thereof;" that it be required to sell and dispose of lot 8, and that the Hill lease be "declared canceled and terminated."

The association by answer admitted that it was holding the property in violation of the statute, set out the facts of its holding and that it was proceeding in good faith to protect itself from loss and in an effort to get out of the "predicament" it was in as a result of the Hill lease. The association prayed that the Hill lease be decreed to be terminated and of "no further force and effect" and that it be given time to dispose of lot 8.

The defendant Hill, by appropriate pleadings along the way, presented the question of the jurisdiction of the court to try the validity of its lease in a *quo warranto* proceed-

ing, pleaded his title, alleged the validity of the lease and asserted affirmative defenses not necessary to be mentioned here.

There was accordingly no issue presented as to whether or not the defendant was holding the property in violation of the statute. That was admitted. The issue which the attorney general and the association sought to have determined by the trial court was the force and effect of the Hill lease, as between the defendant Hill and the association.

The trial court found that the association had lawfully acquired the two lots; that it had abandoned the purpose for which they were purchased; that it was holding the property in violation of the statute above quoted and ordered that it cease and desist "from holding said lots * * * within a reasonable time from the entry" of the judgment and retained jurisdiction to make further orders on application of the attorney general. The trial court further found that defendant Hill was the owner of lot 7 subject to the rights of the defendant; that it had no jurisdiction to determine the rights of the defendants as between themselves and refused to determine those issues, without prejudice to their being determined in a proper action.

Before considering the specific assignments of error it is advisable to define the limited questions presented by the appeal. It is not contended that the original acquiring and holding of the property was other than lawful. The finding of the trial court that the association "did lawfully acquire the said lots 7 and 8" is not here questioned. Neither is the trial court's finding and order questioned that the association is holding lot 8 (held in fee simple) in violation of the law and that it cease and desist from holding said lot. Neither is the trial court's finding and order questioned that the association is holding whatever title it has, if any, to lot 7 (the leasehold), in violation of the statute nor that it should cease and desist from holding that title and possession. The questions presented by the appeals are the manner in which it shall dispossess itself of that title, if any, and whether or not it has any title, right of possession or obligation under the lease.

The attorney general in his brief states that "the nature and character of the Hill lease * * * is wholly immaterial to this controversy," and that whether the association was occupying under the 99-year lease as tenant at will or from month to month is beyond the issues of this controversy; that the state is entitled to an order requiring the association to cease and desist from holding lot 7, and advances the contention that the only way that can be effected is by the cancelation and termination of the Hill lease; that the trial court's order to the association to "cease and desist from holding" lot 7 is ambiguous unless construed to require the "cancelling and terminating" of the Hill lease. We see no merit in this contention. It resolves itself down to the position that if one party to a contract finds the burdens difficult to perform that the remedy is to have a court cancel and terminate the contract. Obviously there are legal ways to cease "holding" the Hill lease other than by cancelation, although that method is open to the parties. The attorney general admits that the method to cease holding lot 8 is by sale. The same method is legally available as to the leasehold of lot 7. The fact that the lessor has been unwilling to agree to a cancelation or modification of the terms of the lease "so as to make it more marketable" (as stated by the association in its brief), does not justify a court ordering a cancelation of the lease. The fact that a purchaser of the leasehold who will save the association from loss cannot be found is not an excuse for failure to comply with the law. The fact, if it be true, is apparently the basis of the attorney general's position that cancelation is the only way out of the association's "predicament." Assuming that the lease could be sold at a profit, would the attorney general be here contending that the only method by which the association can comply with the order would be by cancelation of the lease? We take it not. The statute provides that the association shall not "hold the title and possession." The statute does not provide that the association may hold the property until it may dispose of it at a profit or without loss. There is no more basis for requir-

ing a cancelation of the lease as a method of complying with the statute and the court order than there would be to require the ceasing to hold the fee title to lot 8 by reconveyance to the original grantor. The attorney general does not suggest that there is any ambiguity in the court's order as to lot 8 (held in fee) nor does he suggest that that part of the court's order be "construed" so as to require a certain method by which the association shall cease holding that property. The question of how the association is to comply with the court's order is, at least in the first instance, an administrative decision for the association to determine. That it must comply with the statute and court order and dispose of the title and possession of this property is clear. We see no reason for modifying the trial court's order in the manner suggested by the attorney general, nor do we agree with the attorney general that the trial court's order means that the lease "be regarded as cancelled and terminated."

The attorney general is here in effect asking that the court determine the method, and the only method, by which the association is to exercise its power to cease holding the title and possession of the leasehold. This argument goes not to the exercise of the power to cease and desist holding, but is a request that the court determine the manner of exercising the power, and that the court, having determined the manner, itself execute the decision. This court has said: "*Quo warranto* under our statute is intended to prevent the exercise of powers that are not conferred by law, and is not ordinarily available to regulate the manner of exercising those powers." *State, ex rel. Gantz, v. Drainage District*, 100 Neb. 625, 160 N. W. 997; *State, ex rel. Wright, v. Lancaster County Rural Public Power District*, 130 Neb. 677, 266 N. W. 591.

The association in its appeal presents the general contention that any further holding or leasing of the Hill property must be terminated, and that the trial court erred in refusing to determine the issue as between it and the defendant Hill and that the judgment should require the ter-

mination of the lease, the surrender of possession, an accounting of rents received since the beginning of this action, and that the further payment of the association's funds on the lease be ordered stopped. Although asking for a reasonable time to dispose of the fee simple title to lot 8 it asks that the leasehold be terminated "at once." The association advances first the argument that the lease, if valid, is executory as to the part to be performed since the beginning of this action; that it has been unable to secure an agreement with the lessor terminating it or modifying it so as to make it "more marketable" and that it must have a termination of the holding by court order. The argument that the lease is executory is predicated on the proposition that although the lease was within the power of the association when made it has since become *ultra vires* as a result of the action of the association in abandoning the building project and is accordingly unenforceable.

The association next argues that the lease should be ordered terminated "at once" by the court in order that it may thereby protect itself from further loss, and, in this argument, gives no recognition of the duty of the court to protect whatever rights, if any, defendant Hill may have under the lease contract. The association argues finally, that although a determination of whether or not the lease expired with the death of Mrs. Hill in 1935 may not be an absolute essential to a determination of the case, yet it is proper for the court to determine that matter, but that in the event it is held the association is still a tenant under the lease the court should order the lease canceled and terminated, or if it is not such a tenant that the court should grant relief by ordering its occupancy terminated. It will thus be seen that the order sought by the association is not a determination of the question of whether or not it is exercising "powers not conferred by law" in the holding of lot 7, nor whether or not it should cease and desist to hold the title and possession of the property. Rather it seeks a determination by the court of the issue between itself and the defendant Hill as to the existence of the obligations of

the lease and the rights and liabilities, if any, which each have under it, and seeks ultimately to be relieved of its contract liability, if one exists under that instrument. This brings up directly the question of whether or not that issue may properly be determined and that relief granted in a *quo warranto* action.

The action of *quo warranto* is one provided by statute. Comp. St. 1929, secs. 20-21,112 to 20-21,139. Section 20-21,112 not only "prescribes who the defendants to the action may be" (*State, ex. rel. Johnson, v. Consumers Public Power District*, 142 Neb. 114, 5 N. W. (2d) 202), but it also prescribes the acts, the doing of which may be the basis for an information that may bring a person before the bar of a court to answer as to the alleged acts. Patently the defendant Hill has neither been charged with the doing of any of those acts, it is not shown that he has done any of the enumerated acts, nor that he has done any wrong that authorizes the bringing of a *quo warranto* action against him. The basis of the information here is that the defendant association, a corporation, has and is exercising "powers not conferred by law." That charge is not made as against the defendant Hill. Section 20-21,117 provides that the "defendant shall appear and answer such information in the usual way, and issue being joined it shall be tried in the ordinary manner." What does the defendant answer? It is the charge of the information. What issue is joined? It is that made by the information and the answer. Clearly the statute contemplates that a *quo warranto* proceeding shall be used to determine the issue made by the authorized charge of the information and the answer thereto of a defendant properly charged in that information. The controversy between the defendant Hill and the association is no part of that authorized issue. We reach the conclusion, from an analysis of the statute, that the trial court correctly refused to determine the issues between the defendant Hill and the association.

In this we are sustained by the authorities.

"In the absence of statutory provision extending its scope,

*quo warranto* can be resorted to only when the act or wrong complained of does injury to the public. Consequently, it cannot generally be invoked for the redress of mere private grievances or the vindication of private rights." 44 Am. Jur. 98, sec. 18.

*Quo warranto* "does not lie merely to establish, determine, and vindicate private rights and interests, or to redress private grievances in which the public has no interest, unless it is so provided by statute." 51 C. J. 315.

The association argues that sections 20-317 and 20-323, Comp. St. 1929, make the defendant Hill a proper party and authorize the court to enter judgment affecting his rights and in this instance the cancelation and termination of his lease. Those provisions are: "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein." Comp. St. 1929, sec. 20-317. "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in." Comp. St. 1929, sec. 20-323. Assuming, but not deciding, that those statutes apply to *quo warranto* proceedings we are unable to see where they sustain the association's position. They must, at best, be construed in connection with the *quo warranto* statute. The "controversy" in the *quo warranto* proceeding had to do with the association exercising powers not conferred by law, to wit, the holding of title and possession to certain real estate. Hill has or claimed no interest in that controversy "adverse to the plaintiff" nor was his presence necessary to a "complete determination" of that question. As has been pointed out the only "controversy between parties" before the court in the *quo warranto* action was that which had to do with the charge that the association was exercising "powers not authorized by law." The dispute between Hill and the asso-

ciation was not a controversy properly before the court in this action, and hence was not for determination.

The judgment of the district court is affirmed.

AFFIRMED.