JAKE STASCH ET AL., APPELLANTS, V. CLYDE WEBER ET AL.,
APPELLEES.

199 N. W. 2d 391

Filed July 7, 1972. No. 38354.

Michael V. Smith, for appellants.

W. Gerald O'Kief, John A. Wagoner, and Thomas A. Wagoner, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

This is a quo warranto action initiated by several residents of Cherry County, Nebraska, seeking to oust the members of the Cherry County Committee for the Reorganization of School Districts, hereinafter referred to as the County Committee. The district court resolved

all of the issues in favor of the defendants. We reverse the judgment of the district court and direct that a judgment of ouster be entered.

The issues presented in this case are whether the defendants, in the first instance, were lawfully elected to office and second, whether they are lawfully holding office at the present time. The statute establishing the procedure for the election to the County Committee is section 79-426.05, R. R. S. 1943, which provides in relevant part: "All of the members of the school boards and boards of education within the county and joint districts under the jurisdiction of that county committee shall, at a meeting called for that purpose by the county superintendent of schools within one hundred twenty days from August 27, 1949, and each four years thereafter, (1) determine by a majority vote of those present the number of members of the county committee within the limits prescribed in this section, and (2) elect for a term of four years all the remaining members of the committee * * *."

Because of the nature and importance of an ouster action, the rules governing the procedure are different than in an ordinary civil action. No presumption arises in a person's favor merely from his physical possession or his attempt to exercise the authority of a public office. In an ouster action, the person claiming the office must make a prima facie showing of his legal right to hold the office. Once that is done, certain presumptions (not applicable herein) arise in his favor which may cause the burden of advancing to shift to the relator, but it is clear that the burden of proof in the first instance is on the defendant whose right to the office is challenged. See, State ex rel. Einstein v. Northup, 79 Neb. 822, 113 N. W. 540; 74 C. J. S., Quo Warranto, § 43, p. 260; 44 Am. Jur., Quo Warranto, § 106, p. 167; Ferris, Extraordinary Legal Remedies, § 136, p. 156.

The relators have standing to bring this action. This is true even though they claim no right to the office

themselves. This result follows from a proper construction of section 25-21,122, R. R. S. 1943. The action, under the statute, must in the first instance be brought by the county attorney of the appropriate county. The statute provides that in the event he refuses to bring such action, a private person acting in the public interest may bring such action to oust an officeholder who is not legally entitled to his office. The relators, having complied with the provisions of the statute, become substituted in interest with the county attorney and it follows that the same rules as to burden of proof and procedure apply as if the action were brought by the Attorney General or the county attorney in the first instance.

We turn to the evidence. Despite the fact that the statute requires an election every 4 years, the only official record in the evidence in this case of an election of or to the County Committee are the minutes of a meeting held for that purpose on *October 15, 1957.* The minutes show that one "Cleo Bloom" was elected in 1957, and that "Cleo Bloom, Jr." is a defendant in this action brought over 10 years later. There is nothing in the record to explain or to show that these names refer to the same person. More important, "Bob Hanna" was elected, according to the minutes, in 1957, and "Samuel K. Hanna" is a defendant herein. There is an oblique reference in the record which indirectly suggests that these may be the same persons, but there is no proof that they are. Surely the identity of an elected public official must be established with certainty and cannot rest upon speculation as to phonic similarity.

The record does show that in January 1963, an information letter was sent to the State Committee for Reorganization of School Districts which shows the names of the members of the County Committee and indicates that they were elected April 5, 1962. But nowhere in the record does there appear the official minutes of the County Committee, the results of the

voting, or a canvass of the votes to establish officially the record of the defendants' election. No explanation of this failure appears in the record. It is not suggested that they were lost, destroyed, or for some other reason secondary evidence could not be introduced to establish the minutes showing that the statutory procedure had been followed and the election held. It becomes apparent there is a total lack of competent proof in this record to establish that a proper election was held under the statute and that the defendants were legally elected by a majority vote of those present to the office they now purport to hold.

Turning now to the situation 4 years later in 1966 we find there is evidence in the record showing the publication of an official notice of an election to be held to select members of the County Committee. This election was to be held, pursuant to the terms of the notice, on April 1, 1966. Assuming that this election was held, pursuant to the notice, there is no record of the results. The lack of all official action and all official record is confirmed by the fact that the only evidence introduced in this respect is that the then county superintendent of schools testified this election was in fact held but *could not remember who had been elected.* Again, there are no official minutes, no showing that the election was held by the proper officers, no showing that the votes were canvassed, or the number of votes cast or that they were cast by the authorized persons. Again, the only evidence in the record in this respect is that almost one and one-half years later, in August 1967, and again in August 1968, an information letter was sent to the State Department of Education which purports to show that the members of the County Committee included most, but not all, of the defendants. Again, the court is left in doubt with reference as to whether any legal election was held, because there is no statement or report of the election and its results in this information letter.

We can come to no other conclusion but that the defendants have failed to meet their burden of proof. Without explanation, there are no official minutes or record of official board action, no official document in the record which entitles the defendants to hold the office that they purport to occupy. When a challenged official purports to hold office by virtue of an election, he must show that the election was held and that he was in fact elected. Holding a public office can rest on nothing less than such evidence, unless a satisfactory and convincing explanation is made as to the lack of an official record. The right to hold a public office is ordinarily shown by producing a certificate of election by the proper officer, or by showing that by the canvass of votes at the election by the authorized persons, the officer has received a plurality or the necessary number of votes to have been elected. 2 Bailey on Habeas Corpus, § 329, p. 1278. There is no showing in this record explaining the failure of proof of the official action in the official minutes of the County Committee. The integrity of the elective process cannot be established by extra-statutory informational letters signed by one person as a substitute for the unexplained absence of any official record of the election and the legal results thereof. There has been an entire failure of the burden of proof on the part of the defendants to establish their right to hold the purported office that they claim.

Also the defendants contend that they are holding over in office by virtue of section 32-1045, R. R. S. 1943, which provides for an incumbent to remain in office after the expiration of his term until his successor is duly qualified. There are two answers to this contention. First, this section obviously has no application in a quo warranto proceeding where the officer cannot show that he was an incumbent who was rightfully in office in the first place. Second, even if the defendants are the same persons who were elected in 1957, they

cannot claim the protection of the statute. The proper rule is stated in 67 C. J. S., Officers, § 48, p. 204, where it is stated: "Provisions for holding over until a successor is elected and qualified do not prolong the incumbent's *term* indefinitely, but only for a reasonable time to *allow a successor to qualify.*" (Emphasis supplied.) The only purpose of the holding over statute is to prevent a temporary vacancy in a public office, and to permit a reasonable time to allow for the exigencies many times present in the transfer of public office from one person to his successor. It was not intended to eliminate the necessity for having a proper and required statutory election, and keeping a proper official record of such election and the results thereof. Otherwise the integrity of the elective process would be emasculated by the indifference or the negligence of the parties responsible under the statute for complying with the mandatory requirements of holding the election and officially reporting the results thereof. All of these principles are particularly applicable where you have the same entity charged with the responsibility of the election of their own successors in office.

In the context presented here the defendants' contention that they are legally holding over in office as incumbents is without merit.

Other issues are presented in the briefs of the parties. The main contention is the unconstitutionality of the enabling statutes for the creation of the County Committee and the exercise of its powers thereunder. It is not necessary to discuss this issue because, from what we have said herein, the defendants are not legally holding office and are subject to ouster. We point out, however, that the only issue in a quo warranto action which may be litigated is the right of the defendant to hold public office, and the action must be strictly confined to that issue. The legality of the official action or the constitutionality of the statutes under which the officer purports to act may not be litigated in a quo warranto

action. State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N. W. 2d 784; State ex rel. Good v. Conklin, 127 Neb. 417, 255 N. W. 925; 74 C. J. S., Quo Warranto, § 11, p. 193.

The judgment of the district court is reversed and the cause remanded with directions to enter the proper judgment of ouster against the defendants.

REVERSED AND REMANDED WITH DIRECTIONS.