CON M. BRADLEY, APPELLANT, V. FRANK X. HOPKINS, APPELLEE.

522 N.W.2d 394

Filed September 30, 1994.    No. S-93-378.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos for appellant.

Don Stenberg, Attorney General, and Laurie Smith Camp for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and BOSLAUGH, J., Retired.

CAPORALE, J.

# I. STATEMENT OF CASE

The petitioner-appellant, Con M. Bradley, unsuccessfully sought a writ of habeas corpus directing the respondent-appellee, Frank X. Hopkins, to release him from custody on the ground that the criminal trial court lacked jurisdiction to entertain the charges lodged against him while incarcerated on unrelated convictions. He asserts such was the case because he was not tried within the time required by Nebraska's "disposition of untried charges" statutes, Neb. Rev. Stat. §§ 29-3801 through 29-3809 (Reissue 1989), hereinafter referred to as the act. Inasmuch as Bradley's sentences on the charges at issue include imprisonment for life, his challenge to the judgment of the habeas corpus court was docketed in this court. Neb. Rev. Stat. § 24-1106 (Cum. Supp. 1992). In so doing, Bradley asserts, in summary, that the habeas corpus court erroneously concluded that (1) the criminal trial was timely and (2) he was not deprived of the due process right to such a trial afforded him by the act. We affirm.

# II. THE ACT

The act provides a mechanism for the disposition of untried indictments, informations, and complaints pending in this state against a person already in the custody of the state Department of Correctional Services. Once the expediting provisions of the act are invoked, it is required that, with certain exceptions, pending charges be resolved within a 180-day deadline. Two mechanisms exist which trigger the deadline. One is activated by the inmate and the other by the prosecutor. *State v. Ebert*, 235 Neb. 330, 455 N.W.2d 165 (1990). See *State v. Soule*, 221 Neb. 619, 379 N.W.2d 762 (1986).

A person in the custody of the department can make a written request to the director to expedite any untried indictments, informations, or complaints. § 29-3803. If the inmate does so, the director must forward the request to the court having jurisdiction and send along a certificate outlining the inmate's status, length of incarceration, and other data. The director must also furnish a certificate to the prosecutor with like information.

Section 29-3803 reads:

> Any person who is imprisoned in a facility operated by the Department of Correctional Services may request in writing to the director final disposition of any untried indictment, information, or complaint pending against him or her in this state. Upon receiving any request from a prisoner for final disposition of any untried indictment, information, or complaint, the director shall:
>
> (1) Furnish the prosecutor with a certificate stating the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of the prisoner's parole eligibility, and any decision of the Board of Parole relating to the prisoner;
>
> (2) Send by registered or certified mail, return receipt requested, one copy of the request and the certificate to the court in which the untried indictment, information, or complaint is pending and one copy to the prosecutor charged with the duty of prosecuting it; and
>
> (3) Offer to deliver temporary custody of the prisoner to the appropriate authority in the city or county where the untried indictment, information, or complaint is pending.

A prosecutor can also expedite the disposition of untried charges and start the 180-day clock. See § 29-3804. If a prosecutor has lodged a detainer against an inmate, that prosecutor is entitled to have the inmate made available upon presenting the director with a written request for temporary custody or availability, made through the court having jurisdiction of the untried charges. Upon receipt of this request, the director must issue a certificate to the prosecutor containing certain information concerning the incarceration and offer to deliver temporary custody of the inmate to the authority in the jurisdiction where the charges are pending.

Section 29-3804 provides:

> The prosecutor in a city or county in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner, against whom he or she has lodged a detainer and who is serving a term of imprisonment in any facility operated by the Department

of Correctional Services, made available upon presentation of a written request for temporary custody or availability to the director. The court having jurisdiction of such indictment, information, or complaint shall duly approve, record, and transmit the prosecutor's request. Upon receipt of the prosecutor's written request the director shall:

(1) Furnish the prosecutor with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the good time earned, the time of the prisoner's parole eligibility, and any decision of the Board of Parole relating to the prisoner; and

(2) Offer to deliver temporary custody of the prisoner to the appropriate authority in the city or county where the untried indictment, information, or complaint is pending in order that speedy and efficient prosecution may be had.

Once the expediting provisions are activated by either the inmate pursuant to § 29-3803 or the prosecutor pursuant to § 29-3804, the State must, unless the deadline is extended, generally try the inmate or otherwise dispose of the charges within 180 days after the prosecution receives the director's certificate. § 29-3805. Failing that, all Nebraska state courts are divested of jurisdiction to deal with the charges. Section 29-3805 declares:

Within one hundred eighty days after the prosecutor receives a certificate from the director pursuant to section 29-3803 or 29-3804 or within such additional time as the court for good cause shown in open court may grant, the untried indictment, information, or complaint shall be brought to trial with the prisoner or his or her counsel being present. The parties may stipulate for a continuance or a continuance may be granted on a notice to the attorney of record and an opportunity for him or her to be heard. If the indictment, information, or complaint is not brought to trial within the time period stated in this section, including applicable continuances, no court of this state shall any longer have jurisdiction thereof nor shall the untried indictment, information, or complaint be

of any further force or effect and it shall be dismissed with prejudice.

It therefore follows that any purported judgment subject to the expediting provisions of the act which is rendered beyond the nonextended 180-day deadline is void, for a judgment entered by a court lacking subject matter jurisdiction is such and may be attacked at any time in any proceeding. *VonSeggern v. Willman*, 244 Neb. 565, 508 N.W.2d 261 (1993); *Marshall v. Marshall*, 240 Neb. 322, 482 N.W.2d 1 (1992).

## III. SCOPE OF REVIEW

As Bradley claims that the criminal court lacked subject matter jurisdiction and that its judgment was thus void, habeas corpus is a proper means of collaterally attacking the validity of his judgment of conviction. See *Berumen v. Casady*, 245 Neb. 936, 515 N.W.2d 816 (1994).

When no factual dispute is involved, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's conclusion on the issue. *Riley v. State*, 244 Neb. 250, 506 N.W.2d 45 (1993); *24th and Dodge Ltd. v. Commercial Nat. Bank*, 243 Neb. 98, 497 N.W.2d 386 (1993).

However, as becomes clear in parts IV and V, whether subject matter jurisdiction in the criminal court existed depends in part upon the resolution of a factual issue. Thus, we must determine how we treat the habeas corpus court's findings in that regard. That depends upon whether habeas corpus is to be treated as an action at law or one in equity.

We begin that inquiry by noting that habeas corpus requires the showing of legal cause, that is, that a person is detained illegally and is entitled to the benefits of the writ. *Nicholson v. Sigler*, 183 Neb. 24, 157 N.W.2d 872 (1968), *cert. denied* 393 U.S. 876, 89 S. Ct. 174, 21 L. Ed. 2d 148. See, *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976); *State, ex rel., v. Fabisinski*, 111 Fla. 454, 152 So. 207 (1933). Technically, habeas corpus is not an action or suit. *Id.* Cf. *In re Application of Tail, Tail v. Olson*, 144 Neb. 820, 14 N.W.2d 840 (1944) (court noted that proceedings not adversarial and there is no suit between detainee and officer; rather, officer responds to

court's writ). Instead, habeas corpus is considered a summary remedy open to persons detained illegally. *Neudeck v. Buettow*, 166 Neb. 649, 90 N.W.2d 254 (1958); *In re Application of Tail, supra*; *Fabisinski, supra*.

Since the ultimate issue is the legality of detention, other jurisdictions have stated specifically that habeas corpus is a legal remedy rather than an equitable one. See, *State ex rel. Kopp v. Headley*, 60 So. 2d 734 (Fla. 1952); *Fabisinski, supra*; *State ex rel. Eggleston v. Hatrak*, 54 Or. App. 974, 636 P.2d 1017 (1981).

Nonetheless, because when used to determine child custody issues equitable principles predominate, with the best interests of the child being paramount, see *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992), we have held that factual issues in such instances are determined de novo on the record, *id*.

On the other hand, equitable considerations such as whether a detention is unjust, arbitrary, or unreasonable are generally not involved in habeas corpus cases dealing with adult criminal detention because the legality of detention is the ultimate issue. See *Headley, supra*. We thus conclude that when habeas corpus is used to test the validity of adult criminal detention, factual issues are to be reviewed as in actions at law. See *Smallman v. Gladden*, 206 Or. 262, 291 P.2d 749 (1955), *overruled on other grounds, State v. Collis*, 243 Or. 222, 413 P.2d 53 (1966).

The findings of the trial court in a law action in which the court served as the finder of fact have the effect of a verdict and will not be set aside unless clearly erroneous. *Gibb v. Strickland*, 245 Neb. 325, 513 N.W.2d 274 (1994); *Diefenbaugh v. Rachow*, 244 Neb. 631, 508 N.W.2d 575 (1993). See *Anderson v. Transit Auth. of City of Omaha*, 241 Neb. 771, 491 N.W.2d 311 (1992).

## IV. FACTS

On June 27, 1988, a complaint was filed charging Bradley with first degree murder in Saline County. A warrant for his arrest was signed the same day. On the following day, June 28, he was brought before the Saline County Court. Following this appearance, the department, because of the pending criminal investigation, placed Bradley in segregated confinement at its

penitentiary. An amended complaint was filed the next day, June 29, adding a use of firearms to commit a felony charge.

A hearing was held in the county court on July 5 to present the amended complaint, and transportation for Bradley by the Saline County sheriff was ordered by the county court. At an August 18 preliminary hearing, Bradley was bound over to the district court for arraignment and trial.

A request for a formal detainer against Bradley was not made until December 14. Bradley was informed of the existence of a detainer on January 10, 1989, and told of his right to request disposition of untried charges.

Bradley asserts that on July 1, 1988, he sent a form through the penitentiary's institutional mail service to the director of the department, requesting a disposition of the untried charges. Bradley received no response and admits that he did not follow up on his disposition request. However, he assumed the request was received because he "was going in and out to court," and claims that other request forms had gone unanswered.

The director's administrative secretary could not recall ever having seen a disposition request from Bradley. The normal procedure would have required the secretary to forward such a form to the department's special services. The supervisor of special services, who also served as the deputy detainer administrator, testified that his files contained neither a copy nor the original of the form. Nor did his files contain a certificate from the director to the court authorities requesting disposition of the charges. The supervisor also testified that if a county wants a penitentiary inmate for prosecution on untried charges, it generally must have a court order from a district court. However, his office handles these procedures only if there is a detainer in place and the office is "activating that request under the Inter-State Detainer Compact or the Inter-State Agreement on Detainers." Otherwise, if there is only a court order and no detainer on an inmate, the department's records manager handles the transfers.

The records manager testified that Bradley's "central inmate file" would normally contain detainer documents and other documents pertaining to untried charges. He testified that detainer documents are placed in the file after they have been

forwarded from the detainer administrator's office. Although the central file contained documents generated when Bradley was placed in segregation following his return from his first county court appearance, it did not contain either a disposition request form, a copy of the arrest warrant, or any transportation documents.

The trial in criminal court took place more than 180 days after Bradley claims to have sent his disposition request, and thus more than 180 days from Bradley's first appearance in county court.

## V. ANALYSIS

### 1. TIMELINESS OF CRIMINAL TRIAL

As noted in part I, Bradley claims, in connection with the first summarized assignment of error, that the trial in criminal court was untimely. In rejecting that claim, the habeas corpus court (a) found that Bradley did not activate the expediting provisions of § 29-3803 and (b) concluded that Bradley's first appearance in county court did not activate the expediting provisions of § 29-3804.

#### (a) Disposition Request

Bradley urges that the evidence is insufficient to support the habeas corpus court's rulings. In regard to the disposition request question, the habeas corpus court specifically noted it was not persuaded that Bradley made such a request, thus finding that Bradley did not make the request he claims to have made.

Having resolved in part III that in cases such as this, fact issues are to be reviewed as in actions at law, we recall that in determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidentiary conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993).

In such a review, an appellate court does not reweigh the evidence, but considers the evidence in a light most favorable to the successful party and resolves evidentiary conflicts in favor

of that party, who is entitled to every reasonable inference deducible from the facts. *Peterson v. Kellner*, 245 Neb. 515, 513 N.W.2d 517 (1994).

When evidence is in conflict, as it is here, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of L.J., M.J., and K.J.*, 238 Neb. 712, 472 N.W.2d 205 (1991).

It is significant that the disposition request form does not appear in any file in which one would expect it to be, and while there was some testimony that Bradley discussed this form with counsel around the time of the criminal trial, there is no testimony by anyone other than Bradley that the form ever existed.

Under that state of the record, we cannot say the habeas corpus court's finding that Bradley did not make the disposition request he claims to have made is clearly erroneous. Once it is found that Bradley made no request, it necessarily follows that none of the expediting steps of § 29-3803 were put in operation.

### (b) Court Appearance

This brings us to Bradley's claim that pursuant to § 29-3804, the criminal trial was required to have commenced within 180 days of when he first appeared in county court on June 28, 1988; that is, the act of the prosecutor in causing Bradley to appear before a court started the running of the 180-day clock, notwithstanding the lack of a certificate from the director to the prosecutor.

In making that claim, Bradley relies principally on our opinion in *State v. Ebert*, 235 Neb. 330, 455 N.W.2d 165 (1990). Therein, we affirmed the district court's judgment of conviction against the defendant's claim that he should have been discharged because he had not been tried within the time limit specified in the "discharge from custody or recognizance" statutes, Neb. Rev. Stat. § 29-1201 et seq. (Reissue 1989). The *Ebert* court held that as the defendant was incarcerated in Nebraska when the detainer was filed with the department, the matter was controlled not by the discharge from custody or recognizance statutes, but by the act here at issue. In the course

of illustrating the methods by which the act's deadline could be invoked, we wrote:

> These sections [§§ 29-3801 to 29-3809] do not require the prosecutor to file a detainer against any prisoner, but only require that a detainer be filed if the prosecutor elects to seek temporary custody or availability of a prisoner pursuant to § 29-3804. The filing of a detainer is not required in order for a prisoner to assert his or her right to a speedy trial pursuant to § 29-3803.

*Ebert*, 235 Neb. at 335, 455 N.W.2d at 168.

Seizing upon the last sentence of the foregoing language, Bradley concludes *Ebert* means that the act's 180-day clock begins to run as soon as prison officials learn of pending untried charges, even if a formal detainer was not filed and notwithstanding the failure of the director to issue the certificate contemplated by the act. Such a reading is unwarranted.

The first sentence of the quoted language does nothing more than explain that the act does not require that a prosecutor ever file a detainer. Only if and when the prosecutor seeks temporary custody or availability of the inmate pursuant to the act must such be done. If such is done, the expediting provisions of § 29-3804 come into play; if no detainer is filed, they do not. The last sentence of the quoted language merely explains that the inmate need not wait for the filing of a detainer, but, rather, may start the running of the 180-day clock by invoking the expediting provisions of § 29-3803.

Bradley attempts to bolster his unwarranted reading of the quoted language by pointing out that the *Ebert* court computed that the defendant had been timely tried, notwithstanding the failure of the record to establish whether the prosecutor had ever received a certificate from the director. But that analysis must be read in light of the facts at issue and the holding in light of those facts. See, *Abbott v. Gould, Inc.*, 232 Neb. 907, 443 N.W.2d 591 (1989), *cert. denied* 493 U.S. 1073, 110 S. Ct. 1119, 107 L. Ed. 2d 1026; *Douglas County v. Vinsonhaler*, 82 Neb. 810, 118 N.W. 1058 (1908) (language of judicial opinion must be read in context of facts under consideration and its meaning limited by those facts). The *Ebert* holding reads:

The record shows that the defendant was fully aware of the complaint pending against him in Lancaster County, but did not take advantage of the provisions of § 29-3803 to secure disposition of this charge. The prosecutor has no duty to proceed pursuant to § 29-3804, and the defendant was not entitled to be discharged pursuant to § 29-3805. The defendant agreed to be tried on a stipulation of facts and has shown no prejudice resulting from the delayed trial of this matter.

235 Neb. at 335-36, 455 N.W.2d at 169.

The computation was made only to dispel any notion that there may have been some basis other than the act on which to claim that the timing of the trial somehow entitled the defendant to be discharged.

## 2. DUE PROCESS

In the second summarized assignment of error, Bradley argues that the mandatory language of the act gave him a due process right to a timely trial, a right which the habeas corpus court ignored. But as neither the expediting provisions of § 29-3803 nor of § 29-3804 were ever invoked, the deadline contained in § 29-3805 never came into play. Thus, the disposition of the first summarized assignment of error against Bradley necessarily disposes of the second summarized assignment of error against him as well.

## VI. JUDGMENT

For the foregoing reasons we, as first noted in part I, affirm the judgment of the habeas corpus court.

AFFIRMED.

WRIGHT, J., participating on briefs.