STATE OF NEBRASKA EX REL. DON STENBERG, ATTORNEY GENERAL OF THE STATE OF NEBRASKA, RELATOR, V. JOHN P. MURPHY, RESPONDENT.

527 N.W.2d 185

Filed February 3, 1995. No. S-94-382.

Don Stenberg, Attorney General, L. Steven Grasz, and Dale A. Comer for relator.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for respondent.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

PER CURIAM.

The State, through its Attorney General, relator Don Stenberg, brought this original action in quo warranto to oust respondent, John P. Murphy, a duly qualified and acting judge of the district court, from membership on the Nebraska Commission on Law Enforcement and Criminal Justice. The State alleges that respondent's dual service as a judge and member of the commission violates the distribution of powers

clause found in Neb. Const. art. II, § 1. Respondent has counterclaimed for an attorney fee and costs. For the reasons detailed hereinafter, we rule for the State on relator's pleading and for respondent on his counterclaim.

## BACKGROUND

The statutes governing the commission are found at Neb. Rev. Stat. §§ 81–1415 through 81–1429 (Reissue 1987 & Cum. Supp. 1992). Section 81–1416 makes the commission "an agency of the state" and provides that "the exercise by the commission of the powers conferred by the provisions of sections 81–1415 to 81–1426 shall be deemed to be an essential governmental function of the state." Section 81–1417 requires that the commission consist of at least 17 members, composed in part of specified officials and in part of designated categories of persons, including "a district court judge," and members of the public at large, to be appointed by the Governor.

Respondent, who became a district court judge in 1983, was first appointed to the commission in 1991 and was reappointed for a 6–year term beginning in January 1994.

## APPROPRIATENESS OF REMEDY

Neb. Rev. Stat. § 25–21,121 (Reissue 1989) permits the filing of an action in quo warranto against, among others, "any person unlawfully holding or exercising any public office . . . within this state . . . ."

Nonetheless, observing that his membership on the commission is mandated by statute, respondent urges that quo warranto does not lie, as relator has an adequate remedy at law, namely, an action seeking to declare unconstitutional that portion of § 81–1417 which requires the membership of a district court judge on the commission.

It is true we have held that quo warranto will not lie where there is another adequate remedy at law or equity. *State, ex rel. Johnson, v. Consumers Public Power District*, 143 Neb. 753, 10 N.W.2d 784 (1943). But if the legislative requirement that a district court judge be a member of the commission contravenes the Constitution, an action resulting in such a declaration alone would not provide a remedy for ousting one holding the position and exercising its powers. In contrast, a quo warranto action

which contemplates the constitutional validity of the position and the ouster of one unconstitutionally holding the position and exercising the powers and duties thereof provides a complete remedy.

In that regard, respondent calls our attention to the language in *Stasch v. Weber*, 188 Neb. 710, 715–16, 199 N.W.2d 391, 395 (1972), reading that the "legality of the official action or the constitutionality of the statutes under which the officer purports to act may not be litigated in a quo warranto action" and declaring that the only issue which may be litigated in a quo warranto action is the right to hold public office and that the action must be strictly confined to that issue. It is important to understand, however, that *Stasch* was resolved on the basis that the claimants failed to show they were properly elected to the offices they sought to occupy. It is axiomatic that the language of a judicial opinion must be read in the context of the facts under consideration and its meaning limited by those facts. *Bradley v. Hopkins*, 246 Neb. 646, 522 N.W.2d 394 (1994). Thus, the language on which respondent relies is mere obiter dictum.

In developing the law in this area, we have held that quo warranto is the exclusive means of challenging the legal existence of a public entity. *Chimney Rock Irr. Dist. v. Fawcus Springs Irr. Dist.*, 218 Neb. 777, 359 N.W.2d 100 (1984). Moreover, the proper method of questioning the validity of legislative action is by collateral attack, that is, by injunction, quo warranto, or other suitable equitable action. *K N Energy, Inc. v. City of Scottsbluff*, 233 Neb. 644, 447 N.W.2d 227 (1989). We have also held that under our quo warranto statute, the action is intended to prevent the exercise of powers that are not conferred by law. *State, ex rel. Wright, v. Lancaster County Rural Public Power Dist.*, 130 Neb. 677, 266 N.W. 591 (1936); *State, ex rel. Gantz, v. Drainage District*, 100 Neb. 625, 160 N.W. 997 (1916).

We have further held that quo warranto is the proper means by which to inquire whether a municipal corporation was legally created and to oust one exercising the privileges and powers of a corporate office which has no legal existence. *Osborn v. Village of Oakland*, 49 Neb. 340, 68 N.W. 506 (1896). Because

the right to occupy and exercise the duties and powers of a constitutionally suspect position cannot be decided in the absence of determining the validity of the position, it logically follows that quo warranto lies to challenge the legal existence of a statutory position created by legislation, the constitutionality of which has been questioned, and to oust the incumbent of an unconstitutional office.

For example, the Supreme Court of Alabama has held that statutory quo warranto is the appropriate remedy to test the existence of a de jure office, the same as to oust a usurper intruding into an office; in adjudicating the existence of such office vel non, the court may determine the constitutionality of the act purporting to create the same. *Corprew v. Tallapoosa County*, 241 Ala. 492, 3 So. 2d 53 (1941). Similarly, the Supreme Court of Illinois has held that a quo warranto action was the proper proceeding to question the right of individuals to serve as commissioners of a hospital authority established pursuant to a state statute and to effect the ouster of such individuals on the ground that the enabling legislation was unconstitutional. *The People v. Spaid*, 401 Ill. 534, 82 N.E.2d 435 (1948). The Supreme Court of South Dakota has also held that quo warranto was an appropriate action to challenge the legal existence of an office. *Hurley v. Coursey*, 64 S.D. 131, 265 N.W. 4 (1936).

Consequently, under the circumstances presented, there is no other adequate remedy at law or equity, and quo warranto is the proper means of testing whether respondent's membership on the commission is constitutionally proper.

## NECESSARY PARTIES

Respondent next argues that having enacted the statute in question, the Legislature is a necessary party to this action. There is no merit in that contention. A necessary party is one who may be compelled to respond to the prayer of the plaintiff's petition, and where there is nothing such a one is called upon to do, or can be compelled to do as a duty, one is not a necessary party. See *Wats Mktg. of America v. Boehm*, 242 Neb. 252, 494 N.W.2d 527 (1993). Nothing sought in this proceeding calls upon the Legislature to do anything, nor can it

do anything; its product either withstands constitutional scrutiny or it does not.

## CONSTITUTIONALITY OF DUAL SERVICE

We thus reach the core issue, whether respondent's dual service is prohibited by our Constitution. The distribution of powers clause is found in Neb. Const. art. II, § 1, and reads:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted.

The purpose of the clause is to establish the permanent framework of our system of government, to assign to the three departments their respective powers and duties, and to establish certain fixed principles upon which our government is to be conducted. *State v. Philipps*, 246 Neb. 610, 521 N.W.2d 913 (1994). The clause prohibits one department of government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives. *Id.*; *State ex rel. Spire v. Conway*, 238 Neb. 766, 472 N.W.2d 403 (1991). See, also, *State ex rel. Meyer v. State Board of Equalization & Assessment*, 185 Neb. 490, 176 N.W.2d 920 (1970); *McDonald v. Rentfrow*, 176 Neb. 796, 127 N.W.2d 480 (1964). The clause also prohibits one who exercises the powers of one department of government from being a member of the other departments. *Conway, supra.* The clause thereby provides a check against the concentration of power and guards against conflicts of interest which arise when one serves two masters. *Id.*

The present case differs from *Conway*, which held that one could not while serving as a state legislator also serve as a professor at an executive department college, in that here a statute mandates dual service. It is thus necessary to consider whether the statute requiring such dual service, § 81-1417, passes constitutional muster and, if not, whether respondent is subject to ouster.

Addressing that second aspect of the matter first, we note that

an unconstitutional statute is a nullity, void from its enactment, and is incapable of creating any rights or obligations. *State v. Bardsley*, 185 Neb. 629, 177 N.W.2d 599 (1970), *overruled on other grounds, State v. Rosenberger*, 187 Neb. 726, 193 N.W.2d 769 (1972). Constitutionally invalid legislation confers no rights; imposes no duties or obligations; and is, in legal contemplation, as inoperative as though it had never been composed or enacted. *Board of Commissioners v. McNally*, 168 Neb. 23, 95 N.W.2d 153 (1959). Thus, if the requirement of § 81-1417 that the commission include a district court judge is unconstitutional, there is no right to membership on that body or obligations which arise therefrom, and respondent would be subject to ouster from such position.

We therefore return to the first aspect of the matter, whether the requirement violates the distribution of powers clause. The answer to that question depends upon whether a district court judge simultaneously serving as a member of the commission is exercising the power of one department of government while a member of another department.

The judicial power of the state is vested in a Supreme Court, an appellate court, district and county courts, and such other courts inferior to the Supreme Court as may be created by law. Neb. Const. art. V, § 1. Therefore, it is clear that as a district court judge, respondent is a state officer, see *Garrotto v. McManus*, 185 Neb. 644, 177 N.W.2d 570 (1970), who exercises the power of the judicial department of government. The questions which remain are whether his service on the commission also makes him a member of another department of government and whether that membership constitutes a "public office," as contemplated by the quo warranto statute, § 25-21,121.

Electing once again to consider the second question first, we look to *Conway, supra*, and thereby recall that for the purposes of quo warranto, a public office is a governmental position, the duties of which invest the incumbent with some aspect of the sovereign power. By empowering members of the commission to accept and administer funds and decide matters relating to the administration of criminal justice, § 81-1423 invests those members with aspects of the State's sovereign powers.

That leaves the question as to whether the commission belongs to some department of government other than the judiciary.

As noted earlier, § 81–1416 provides that the commission is an agency of the State authorized to exercise specified powers conferred as an essential governmental function of the State.

Although it is not always clear whether a state agency is part of the executive or legislative department, it is clear that a state agency is not part of the judicial department of government. Administrative agencies are not courts. *Dickinson v. United States*, 346 U.S. 389, 74 S. Ct. 152, 98 L. Ed. 132 (1953) (draft boards held not to be courts); *In re Groban*, 164 Ohio St. 26, 128 N.E.2d 106 (1955), *aff'd* 352 U.S. 330, 77 S. Ct. 510, 1 L. Ed. 2d 376 (1957); *Hoover Motor Exp. v. R.R. & Pub. Util.*, 195 Tenn. 593, 261 S.W.2d 233 (1953); *Straube v. Bowling Green Gas Co.*, 360 Mo. 132, 227 S.W.2d 666 (1950); *Special Indemnity Fund v. Prewitt*, 201 Okla. 308, 205 P.2d 306 (1948); *State ex rel. Rockwell v. State Board of Education*, 213 Minn. 184, 6 N.W.2d 251 (1942); *Red River Copper Co. v. Industrial Com.*, 58 Ariz. 203, 118 P.2d 1102 (1941). State agencies may be called courts; however, this alone does not change their nature. *Ex parte Bakelite Corp'n*, 279 U.S. 438, 49 S. Ct. 411, 73 L. Ed. 789 (1929).

As a general rule, administrative agencies have no general judicial powers, notwithstanding that they may perform some quasi–judicial duties. Moreover, unless permitted by the Constitution, the Legislature may not authorize administrative officers or bodies to exercise powers which are essentially judicial in nature or to interfere with the exercise of such powers by the court. *Transport Workers of America v. Transit Auth. of City of Omaha*, 205 Neb. 26, 286 N.W.2d 102 (1979). An administrative agency has been said to be a governmental authority, other than a court and other than a legislative body, which affects the rights of private parties through either adjudication or rulemaking.

> "The primary function of administrative agencies is to advance the will and weal of the people as ordained by their representatives — the Legislature. These agencies are created in order to perform activities which the Legislature

deems desirable and necessary to forward the health, safety, welfare and morals of the citizens of this State. While these agencies at times perform some activities which are legislative in nature and thus have been dubbed as quasi–legislative duties, they in addition take on a judicial coloring in that frequently, within the exercise of their power, they are called upon to make factual determinations and thus adjudicate, and it is in that sense that they are also recurrently considered to be acting in a quasi–judicial capacity. This dual role which administrative agencies play has long been accepted in this State as being constitutionally permissible. [Citations omitted.] However, this authority is not the same and, therefore, is distinguishable from the exercising of the 'judicial powers' of this State . . . ."

*Bowman v. City of York*, 240 Neb. 201, 209–10, 482 N.W.2d 537, 543 (1992), quoting *Dep't of Nat. Res. v. Linchester*, 274 Md. 211, 334 A.2d 514 (1975).

State agencies may perform functions of a judicial, quasi–judicial, or factfinding character; however, such agencies are extrajudicial bodies, not courts, judges, judicial bodies, or officers. See *Green et al. v. Milk Control Com. et al., Aplnts.*, 340 Pa. 1, 16 A.2d 9 (1940), *cert. denied* 312 U.S. 708, 61 S. Ct. 826, 85 L. Ed. 1140 (1941). The proceedings of such agencies are not judicial and are without judicial effect.

According to the legislative history, the commission was originally established by the Governor to assist with the administration of law enforcement approximately 2 years prior to the enactment of the legislation creating it. Floor Debate, L.B. 1352, Government Committee, 80th Leg. (June 9, 1969). L.B. 1352 was a reaction to the federal crime control and safe streets act, which encouraged states to prepare and adopt comprehensive law enforcement plans in order to receive federal funds for their programs. Government Committee Hearing, L.B. 1352, 80th Leg. (April 25, 1969). The federal legislation required states to establish and maintain a state planning agency in order to receive a federal grant. The federal legislation provided that such agency "shall be created or designated by the chief executive of the state and shall be subject to his

jurisdiction." *Id.* at 15.

Not only does the Governor appoint the executive director, but the commission is authorized to do a host of things designed to improve the administration of criminal justice and thereby promote the efficient and economic administration of state affairs. Such power is specifically granted to the Governor. Neb. Const. art. IV, § 6. The inescapable conclusion from all the foregoing is that the commission is an executive agency, and a member thereof is a member of the executive department of government.

Consequently, the provision of § 81–1417 which requires that the membership of the commission include a district court judge violates the distribution of powers clause found in Neb. Const. art. II, § 1, and is thus void and unenforceable. It necessarily follows that a district court judge who serves as a member of the commission occupies an unconstitutional and thus a nonexisting commission office. Moreover, the provision of § 81–1417 which mandates that the Governor appoint a district court judge as a member of the commission also violates the distribution of powers clause and is thus void and unenforceable.

In so ruling, we are not unmindful that § 81–1420 provides: "Notwithstanding any provision of law, ordinance, or charter provision to the contrary, membership on the commission shall not disqualify any member from holding any other public office or employment, or cause the forfeiture thereof." However, that language by its own express terms does not undertake to overcome a constitutional provision, nor could it do so, for constitutional language controls legislative language, not the other way around. See *State ex rel. Caldwell v. Peterson*, 153 Neb. 402, 45 N.W.2d 122 (1950) (Legislature cannot lawfully act beyond limits of Constitution).

Those determinations compel us to consider whether the offending provisions may be severed and the remainder of § 81–1417 and the other statutes relating to the commission be preserved.

An unconstitutional portion of a statute may be severed if (1) absent the unconstitutional portion, a workable statutory scheme remains; (2) the valid portions of the statute can be enforced

independently; (3) the invalid portion was not an inducement to the passage of the statute; and (4) severing the invalid portion will not do violence to the intent of the Legislature. *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533 (1992). A severability clause, while indicating that the Legislature contemplated the possible judicial partitioning of the statute and passed it anyway, is not necessary for severability. *Id*.

The membership of a district court judge is not mentioned in any other provision of the relevant statutes. Thus, absent the unconstitutional portions of § 81-1417, a workable statutory scheme still remains. By removing the language reading "a district court judge" from § 81-1417 and removing the mandate that the Governor appoint such a personage, it is only necessary for the Governor to appoint another member of the public at large to serve on the commission.

Nothing in the record shows that the language requiring that the membership of the commission include a district court judge was an inducement to passage of the statute. The legislative history makes no mention of the specification of a district court judge as a member. Moreover, the act fails to designate any specific duties to be carried out by the district court judge as a member of the commission.

Additionally, severing the invalid portion of the statute will not do violence to the intent of the Legislature. As already noted, the legislative history establishes that the purpose of the commission was to create a commission to provide a state plan in order to receive federal money. Section 81-1416 reveals that the commission was created to educate the community about the problems encountered by law enforcement authorities, promote respect for the law, and encourage community involvement in the administration of criminal justice. This purpose can be accomplished without a district court judge serving as a member.

It is clear that the requirement of § 81-1417 that the membership of the commission include a district court judge is severable and that the remainder of that statute and the other statutes relating to the commission remain independently enforceable.

## ATTORNEY FEE

Left for consideration is respondent's counterclaim for an attorney fee and costs. Neb. Rev. Stat. § 25-21,132 (Reissue 1989) provides that if through quo warranto one is "found guilty of unlawfully holding or exercising any office . . . judgment shall be rendered that such [respondent] be ousted, and altogether excluded from such office . . . and also . . . pay the costs of the proceedings." However, the situation presented here is unusual, for respondent was appointed to the commission under the color of statutory law precisely because he lawfully held another office, that of a duly qualified and acting district court judge. Under this peculiar circumstance, § 25-21,132 is the more general statute and must yield to the more specific and conflicting Neb. Rev. Stat. § 24-204.01 (Reissue 1989). See *AMISUB v. Board of Cty. Comrs. of Douglas Cty.*, 244 Neb. 657, 508 N.W.2d 827 (1993) (to extent there is conflict between two statutes on same subject, specific statute controls over general statute). Section 24-204.01 reads in relevant part:

> When an original action is instituted in the Supreme Court by or against the state, or any office, department, or officer thereof, involving the constitutionality of any act of the Legislature no matter when such act was passed, attorney fees and costs may be allowed if any of the following conditions set forth in subdivision (1), (2), or (3) of this section are found to exist:
>
> . . . .
>
> (3) The action is brought by a real party in interest and raises a justiciable issue or issues.
>
> . . . .
>
> The Supreme Court, upon finding that the conditions set forth in this section exist, shall allow reasonable attorney fees and costs in such amounts and for such parties as the court shall determine. Such fees and costs shall be taxed to the Attorney General and paid out of such appropriation as the Legislature shall make for that purpose.

There is no question that this quo warranto action was brought as an original action in this court by the State against an officer of the State, that it was brought by a real party in

interest, and that it raised justiciable issues involving the constitutionality of an act. This court is therefore authorized to allow a reasonable attorney fee and costs.

## CONCLUSION

Accordingly, it is ordered, adjudged, and decreed that respondent be, and he hereby is, ousted, removed, and excluded from membership on the commission and that he be, and hereby is, awarded costs and a reasonable attorney fee in an amount to be determined in accordance with the procedure set forth in Neb. Ct. R. of Prac. 9F (rev. 1992).

JUDGMENT OF OUSTER.