REQUESTED BY: Senator Mark Quandahl, Legislative District 31
You have made a request for an opinion from the Office of the Attorney General on the constitutionality of Legislative Bill 331, 96th Neb. Leg., 1st Sess. In your request, you stated that the proposal "relegates to the Workers' Compensation Courts, the authority properly exercised by the Executive or Legislative branch of government." In a subsequent conversation with your legislative assistant, she mentioned that you wanted the opinion to encompass the final reading language of the legislation.
L.B. 331 in part, enables the Nebraska Workers' Compensation Court to order payment of a monetary penalty by a risk management pool or a workers' compensation insurer, when a violation of the Nebraska Workers' Compensation Act has occurred. This order may be made if the Court finds, after due notice or hearing, that a risk management pool or workers' compensation insurer has failed to comply with an obligation under the Act. Failure to comply with the obligation must occur with such frequency as to indicate a general business practice to engage in that type of conduct.[1]
In addition, the legislation gives the Nebraska Workers' Compensation Court the ability to adjudicate matters which involve a self-insurer failing to comply with an obligation under the Nebraska Workers' Compensation Act. Notice and hearing are provided by the Court to the self-insurer. Failure of the self-insurer to comply with the obligation must occur with such frequency as to indicate a general business practice to engage in that type of conduct. Upon such a finding, the Court is given the ability to suspend or revoke the approval of a self-insurer to provide self-insurance coverage for workers' compensation liability, or to order payment of a monetary penalty.[2]
According to the Administrator of the Workers' Compensation Court, the current enforcement, due notice and hearing procedures provided for in Neb. Rev. Stat. § 48-146.02 (Reissue 1998) are initiated by a presiding judge under an order to show cause proceeding. The Court provides notice of hearing to the respondent. The respondent must then appear at the hearing and give evidence of their compliance with the Nebraska Workers' Compensation Act. Upon a failure by the respondent to show their compliance under the Act, the Court may enforce the Act depending on the classification of the respondent.
If the respondent is an insurance organization, the Court may ask the Department of insurance to suspend or revoke the respondent's ability to write workers' compensation insurance. If the respondent is an intergovernmental risk management pool, the Court may suspend or revoke the respondent's ability to provide group self-insurance coverage of workers' compensation liability. If the respondent is a self-insurer, the Court may suspend or revoke the respondent's ability to provide self-insurance coverage of workers' compensation liability. LB 331 would enhance the enforcement ability of the Court by permitting it to order payment of monetary penalties from a respondent when a violation of the Act occurs. The procedures for a show cause hearing conducted currently under § 48-146.02 would remain in effect under L.B. 331.
 DISCUSSION
The enabling legislation for the Workers' Compensation Court is found in § 48-152. The section provides, "there is hereby created, pursuant to the provisions of Article V, section 1, of the Nebraska Constitution, a court consisting of seven judges . . . which court shall have the authority to administer and enforce all of the provisions of the Nebraska Workers' Compensation Act . . ." Neb. Rev. Stat. § 48-152 (Reissue 1998). According to this section, the Court is established under Article V, the article creating the judicial branch of the state government. Article V provides, "the judicial power of the state is vested in a Supreme Court, an appellate court, district courts, county courts . . . and such other courts inferior to the Supreme Court as may be enacted by law." Neb. Const. Art. V, § 1. Thus, the Workers' Compensation Court is a court formed under the judicial branch of state government, and is not an administrative court or legislative tribunal, as found under the executive and legislative branches, respectively.
The Nebraska Constitution delineates the boundary under which one branch of government may not intrude into the functions of another branch of government. "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others . . ." Neb. Const. Art. II, § 1. "The purpose of the clause is to establish the permanent framework of our system of government, to assign to the three departments their respective powers and duties, and to establish certain fixed principles upon which our government is to be conducted. The clause prohibits one department of government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives." State ex rel. Stenberg v. Murphy, 247 Neb. 358,364, 527 N.W.2d 185, 192 (1995).
This provision of the state constitution has been applied to limit the scope under which duties may be granted to the judicial branch of state government. "It is elementary in the area of the constitutional interpretation of Article II, section 1, of the Constitution, that the Legislature may not impose upon the courts the performance of nonjudicial duties . . ." C.R.T. Corporationv. Board of Equalization, 172 Neb. 540, 545, 110 N.W.2d 194, 198
(1961). The Court, citing a Maryland decision to which it relied upon, stated:
 It would thus be made to seem evident in our fundamental law that the policy and intent of the law is that the courts and judges provided for in our system shall not only not be required, but shall not be permitted, to exercise any power, or to perform any trust, or to assume any duty, not pertaining to, or connected with, the administering of the judicial function, and that the exercise of any power or trust or the assumption of any public duty other than such as pertains to the exercise of the judicial function is not only without constitutional warrant, but against the constitutional mandate in the respect to the powers they are to exercise and the character of the duties they are to discharge.
Tyson et al., v. Washington County et al., 78 Neb. 211, 217,110 N.W. 634, 637 (1907).
The duties of the judicial branch of government have been held to entail rendering decisions in contested matters between adverse parties. "[G]enerally judicial power is the authority to hear and determine a controversy as to rights and upon such determination to render a judgment binding upon the defendants. . . . The authority to hear and determine controversies between public officers, the state, counties, cities and other municipal corporations, subdivisions of the state and the state bonding fund is a judicial power." Lavertyv. Cochran, 132 Neb. 118, 122, 271 N.W. 354, 356-57
(1937).[3] "Judicial power, it would seem, is the authority of some person or tribunal to hear and determine a controversy, and to reduce such determination to a judgment or decree binding the parties thereto." Horbach v. Tyrrell, 48 Neb. 514, 518,67 N.W. 485, 486 (1896).
The judiciary has also been given duties that pertain to the administration of the judicial branch of government. "Particular powers which have been held within the proper scope of the judiciary include among others the power to regulate the practice of law, to regulate the matters of court procedures, to hear causes pending between adverse parties, and to apply the law to the facts of a particular case." 16 C.J.S. § 173. These duties are necessary for the court to conduct the administration of justice, such as formulating court procedures and regulating the admission of attorneys to practice law. See In re Application of Majorek,244 Neb. 595, 508 N.W.2d 275 (1993).
L.B. 331 proposes to give the Workers' Compensation Court the ability to impose a monetary penalty on respondents that the Court finds are not in compliance with the Workers' Compensation Act. Neb. Rev. Stat. Chapter 48, Article 1 (Reissue 1998). These respondents are limited to workers' compensation insurers, self-insurers and intergovernmental risk management pools. The Court will be able to impose this penalty on a respondent after notice and hearing is granted by the Court under its own motion. The monetary penalty is provided as an enforcement tool to bring providers into compliance with the Act.[4]
Pursuant to § 48-146.02, the Workers' Compensation Court currently has the authority to conduct notice and hearing review for insurance and intergovernmental risk management pools that are in violation of the Workers' Compensation Act. Neb. Rev. Stat. § 48-146.02 (1) and (2) (Reissue 1998). This section gives the Court the ability to request the appearance of a respondent in a show cause action before the Court. The Court may request such an appearance when it has reason to believe that the party is in violation of the Workers' Compensation Act.[5]
Although such show cause hearings would remain with the adoption of L.B. 331, the Court presently does not have the ability to impose monetary fines upon respondents who fail to comply with the Act. Instead, as provided in § 48-146.02, the Court may only request the Director of Insurance, found within the Executive Branch of government, to suspend or revoke the authorization of an insurance organization to write workers' compensation insurance. Such a request does not reach the level of an actual monetary penalty being imposed by the Workers' Compensation Court.
With regard to risk management pools, the Court has the ability under § 48-146.02, upon a finding of noncompliance, to suspend or revoke the ability of the risk management pool to provide group self-insurance. These risk management pools only encompass those entities established under § 44-4319 of the Intergovernmental Risk Management Act, and include public agencies rather than private concerns. Under the statute, the Court is given the ability to restrict future actions by the risk management pools within the area of workers' compensation insurance, but again this does not rise to the level of allowing the Court to impose a monetary penalty to address previous violations of the Act by a risk management pool.[6]
The prosecution of laws is a duty reserved for the executive branch of government. "The function of the executive department is to administer and enforce the laws as written and interpreted by the courts." 16 C.J.S. § 215. "The judicial department of the government may not encroach on the executive department, and may not interfere with administrative activities of the executive branch only when necessary to protect individual constitutional rights." 16 C.J.S. § 203. "[U]nder the division of powers devised by the Constitution, neither the Legislature nor the courts may exercise the powers thus conferred upon the executive branch."State v. Young, 154 Neb. 588, 591, 48 N.W.2d 677, 679 (1951). Therefore, the judicial branch of government may not encroach upon an area reserved for the executive branch. The prosecution of law is a power reserved for the executive branch and may not be delegated to the judicial branch.
L.B. 331, if enacted, would give an Article V court, rather than the executive branch, the ability to prosecute violations of law. The provisions in the legislation that allow the Court to prosecute violations of the Workers' Compensation Act, and at the same time allow the Court to sit in judgment, violates ArticleII, § 1 of the Nebraska Constitution.
The Doctrine of the Separation of Powers has long been a cornerstone in our republican form of both federal and state government. The Nebraska Supreme Court quoted Alexander Hamilton's argument found in Federalist No. 78:
 The executive not only dispenses the honors, but holds the sword of community; The legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen are to be regulated; The judiciary, on the contrary, has no influence over either the sword or the purse; no direction either of the strength or of the wealth of society; and can take no active resolution whatsoever; It may truly be said to have neither force nor will, but merely judgment.
State ex rel. Randall v. Hall, 125 Neb. 236, 242, 249 N.W. 756,759 (1933). The purpose of the Separation of Powers Doctrine found in Article II, § 1 of the Nebraska Constitution is "to establish and maintain the independence of the three branches of government." Id. L.B. 331 violates this independence.
 CONCLUSION
Legislative Bill 331 is unconstitutional on its face, as it gives a court established under Article V, Section 1 of the Nebraska Constitution the ability to prosecute a violation of statutory law. Such authority given by the Legislature to an Article V court is prohibited by the Separation of Powers provision found in Article II, § 1 of the Nebraska Constitution. L.B. 331 would allow an encroachment by the judicial branch of state government into the powers reserved exclusively for the executive branch of government under Article IV of the Nebraska Constitution. Sincerely,
 Don Stenberg Attorney General
 Jason W. Hayes Assistant Attorney General
Approved:
Don Stenberg 
Attorney General
pc: Patrick J. O'Donnell Clerk of the Legislature
[1] See L.B. 331, § 2 (a) and (b).
[2] See L.B. 331, § 2 (c).
[3] "The judicial function under the Constitution is to apply the law in controverted cases . . ." Gordon v. Lowry,116 Neb. 359, 361, 217 N.W. 610, 611 (1928) (citing from 2 Wigmore, Evidence (2d Ed.) § 1353).
[4] See Introducer's Statement of Intent, L.B. 331, 96th Neb. Leg., 1st Sess. (Neb. 1999).
[5] This is the procedure outlined by the Administrator of the Workers' Compensation Court.
[6] Presently under § 48-145 (1), the Workers' Compensation Court may in its discretion withdraw approval of a self-insurer to provide its own coverage under the Workers' Compensation Act. Neb. Rev. Stat. 48-145 (1) (Reissue 1998). L.B. 331 would give due process rights to a self-insurer by requiring a notice and hearing procedure for withdrawing such approval. Section48-145(1) currently does not provide for a monetary penalty to be imposed by the Court for violations of the Act committed by self-insurers.