State of Nebraska ex rel. Don Stenberg, Attorney General of the State of Nebraska, relator, v. Scott Moore, Secretary of State of the State of Nebraska, respondent.

544 N.W.2d 344

Filed March 8, 1996.   No. S–95–710.

Don Stenberg, Attorney General, L. Steven Grasz, and Dale A. Comer for relator.

Patrick T. O'Brien, of Bauer & Galter Law Firm, for respondent.

White, C.J., Caporale, Fahrnbruch, Lanphier, Wright, Connolly, and Gerrard, JJ.

Wright, J.

This is an original action in which the relator, the Attorney General of the State of Nebraska, requests a declaratory

judgment regarding the constitutionality of 1993 Neb. Laws, L.B. 507, which has been codified at Neb. Rev. Stat. §§ 50–129 and 50–130 (Reissue 1993). L.B. 507 requires future legislation projected to increase total inmate population in state correctional facilities to include certain cost–estimate provisions in the legislation and requires that a separate appropriations bill be enacted in the same legislative session. The relator maintains that L.B. 507 is unconstitutional and that the Legislature has repealed L.B. 507 by implication.

## FACTS

On June 20, 1995, the relator filed an application for leave to commence an original action, a statement of jurisdiction, and a petition for original action for declaratory judgment in this court seeking a declaratory judgment finding that L.B. 507 violates article III, §§ 1, 13, 14, and 22; article IV, § 15; and article II, § 1, of the Nebraska Constitution. We granted the relator's application to commence an original action.

The relator and the respondent, the Secretary of State of the State of Nebraska, have stipulated to the following facts:

On May 24, 1993, the 93d Legislature of the State of Nebraska passed L.B. 507, which became effective on May 27. Subsequently, the Legislature passed 1995 Neb. Laws, L.B. 371, which became operative on September 9, 1995. L.B. 371 may affect the total inmate population of the state correctional facilities. L.B. 371 does not include cost estimates in the legislation, as required by § 50–129, and no separate appropriations bill accompanied it.

The Legislature's fiscal analyst prepared an estimate regarding the fiscal impact of L.B. 371, which stated:

1. Second Degree Murder: The bill increases the minimum penalty from 10 to 20 years. . . . [T]he impact would be felt beginning in the 11th and subsequent years, when the average daily population would increase . . . .

2. Habitual Criminals: . . . The impact of this penalty enhancement will not be realized until approximately the year 2000. . . .

3. Deadly Weapon Offenses: . . . The increase in the number of inmates is estimated at 0 in FY [fiscal year]

95–96, 51 in FY 96–97 and 154 in FY 97–98 and FY 98–99.

4. Good Time Changes: . . . Previous Department of Corrections estimates showed a maximum impact of 515 inmates at the end of 5 years, or a minimum impact of '0', if all inmates participate in programs. . . .

## ANALYSIS

The issues as framed by the relator are (1) whether L.B. 507 violates Neb. Const. art. III, §§ 1, 13, and 14, by impermissibly binding future legislatures and imposing additional requirements on future legislatures for valid enactment of legislation beyond the requirements established in the Constitution; (2) whether L.B. 507 violates Neb. Const. art. III, § 22, by impermissibly imposing requirements on future legislatures for valid enactment of appropriations for the expenses of the government beyond the requirements established in the Constitution; (3) whether L.B. 507 violates Neb. Const. art. IV, § 15, by instituting a legislative veto in contravention of the exclusive veto authority constitutionally vested in the Governor; (4) whether L.B. 507 violates Neb. Const. art. II, § 1, by purporting to declare validly enacted legislation null and void without judicial review; and (5) whether L.B. 507 was repealed by implication by the 94th Legislature with the passage of L.B. 371, which on its face is allegedly conflicting and repugnant to the requirements of L.B. 507.

Section 50–129 provides:

(1) When any legislation is enacted after June 30, 1993, which is projected in accordance with this section to increase the total adult inmate population or total juvenile population in state correctional facilities, the Legislature shall include in the legislation an estimate of the operating costs resulting from such increased population for the first four fiscal years during which the legislation will be in effect. The estimate shall utilize the amounts estimated in the fiscal note prepared by the Legislative Fiscal Analyst for such legislation and the amounts estimated by the Department of Correctional Services pursuant to this section.

(2) The Department of Correctional Services shall submit its estimate of any such increased operating costs to the Legislative Fiscal Analyst and the budget division of the Department of Administrative Services along with the information it submits to such entities for purposes of preparing a fiscal note for the legislation. The estimate shall include a projection, based on the prior three-year average of data for similar crimes, of the number of additional adult and juvenile inmates or years of additional incarceration expected from the legislation.

(3) The Legislature shall provide by specific itemized appropriation, for the fiscal year or years for which it can make valid appropriations, an amount sufficient to meet the cost indicated in the estimate contained in the legislation for such fiscal year or years. The appropriation shall be enacted in the same legislative session in which the legislation is enacted and shall be contained in a bill which does not contain appropriations for other programs.

(4) Any legislation enacted after June 30, 1993, which does not include the estimates required by this section and is not accompanied by the required appropriation shall be null and void.

(5) For purposes of this section, operating costs shall include only adult inmate and juvenile per diem and medical expenses.

Section 50-130 provides:

Funds appropriated for increased correctional operating costs pursuant to section 50-129 shall be reserved and used as contingency funds by the Department of Correctional Services. The Legislature shall appropriate all contingency funds to a separate and distinct budget program. The budget division of the Department of Administrative Services may transfer appropriations from the contingency program to the budget program of any correctional facility upon written certification by the Director of Correctional Services that all adult inmate and juvenile per diem and medical expense funds appropriated by the Legislature have been exhausted. Contingency funds

shall only be expended on adult inmate and juvenile per diem and medical expenses.

The relator argues that L.B. 507 is unconstitutional because it purports to make null and void future legislation that does not include the required estimates and appropriations. The relator asserts that L.B. 507 violates Neb. Const. art. III, §§ 1, 13, and 14, by impermissibly binding future legislatures and imposing additional requirements on future legislatures for valid enactment of legislation beyond the requirements established in the Constitution. The relator points out that L.B. 507 requires future legislation to include estimates regarding operating costs and to be accompanied by a specific itemized appropriations bill. In the absence of such items, the legislation would be null and void. See § 50-129(4).

Article III, § 1, vests the legislative authority of the State in a legislature consisting of one chamber. The people reserve for themselves the power to propose laws and amendments to the constitution and to enact or reject the same at the polls independent of the Legislature. Article III, § 13, provides: "[N]o law shall be enacted except by bill. No bill shall be passed by the Legislature unless by the assent of a majority of all members elected . . . ." Article III, § 14, provides: "No bill shall contain more than one subject . . . . And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed."

We have not previously addressed the general rule concerning attempts by one legislature to bind or restrict succeeding legislatures. The general rule is set out in 82 C.J.S. *Statutes* § 9 at 24-25 (1953):

> One legislature cannot bind a succeeding legislature or restrict or limit the power of its successors to enact legislation, except as to valid contracts entered into by it, and as to rights which have actually vested under its acts, and no action by one branch of the legislature can bind a subsequent session of the same branch. . . .

This rule finds support in cases from other jurisdictions. In *Frost v. State*, 172 N.W.2d 575, 583 (Iowa 1969), Iowa Code Ann. § 313A.20 provided:

> "While any bonds issued by the commission remain outstanding, the powers, duties or existence of the commission or of any other official or agency of the state shall not be diminished or impaired in any manner that will affect adversely the interest and rights of the holders of such bonds. * * *"

The plaintiff contended that this was an illegal attempt to bind future legislatures and to freeze the Iowa State Highway Commission, both as to personnel and power, as it existed until all bonds were paid. The defendant argued that this section only announced the principle that the state could not pass any law impairing the obligation of a contract. It was conceded that the bonds constituted a contract between the commission and the bondholders and that the state could not impair such obligation. However, the court found that § 313A.20 would illegally restrict any future general assembly in enacting legislation relating to the commission, its activities, or its personnel during the life of the bonds. The court stated: "The authority of a legislature is limited to the period of its own existence. One general assembly cannot bind a future one." *Frost*, 172 N.W.2d at 583. The court declared § 313A.20 to be invalid for that reason.

In *Iowa–Nebraska L. & P. Co. v. City*, 220 Iowa 238, 247, 261 N.W. 423, 429 (1935), the court stated: "The power of the Legislature is derived from the Constitution and thereunder one *Legislature* cannot bind a *succeeding Legislature* . . . ."

The Supreme Court of Georgia has stated that one legislature " 'can not tie the hands of its successors, or impose upon them conditions, with reference to subjects upon which they have equal power to legislate.' " *Village of North Atlanta v. Cook*, 219 Ga. 316, 321, 133 S.E.2d 585, 589 (1963).

In *Atlas v. Board of Auditors*, 281 Mich. 596, 599, 275 N.W. 507, 509 (1937), the Supreme Court of Michigan stated:

> The power to amend and repeal legislation as well as to enact it is vested in the legislature, and the legislature cannot restrict or limit its right to exercise the power of legislation by prescribing modes of procedure for the repeal or amendment of statutes; nor may one legislature restrict or limit the power of its successors.

In Nebraska, the proposition that one legislature cannot bind a succeeding legislature is derived from the constitutional power of the Legislature to legislate. The Legislature has plenary legislative authority except as limited by the state and federal Constitutions. *Lenstrom v. Thone*, 209 Neb. 783, 311 N.W.2d 884 (1981); *Dwyer v. Omaha–Douglas Public Building Commission*, 188 Neb. 30, 195 N.W.2d 236 (1972). The Nebraska Constitution is not a grant, but, rather, is a restriction on legislative power, and the Legislature may legislate upon any subject not inhibited by the Constitution. *State ex rel. Meyer v. County of Lancaster*, 173 Neb. 195, 113 N.W.2d 63 (1962). Therefore, absent a constitutional restriction on the legislative power, one legislature cannot restrict or limit the right of a succeeding legislature to exercise the power of legislation.

Because the Legislature may legislate upon any subject not inhibited by the Constitution, if this court were called upon to enforce the provisions of L.B. 507 against legislation enacted by a subsequent legislature, we would not have the authority to do so. The state Constitution is not a grant, but a restriction of legislative power. Consequently, courts can enforce only those limitations which the Constitution imposes. *Lenstrom v. Thone, supra*; *United Community Services v. The Omaha Nat. Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956). Unless restricted by some provision of the state or federal Constitution, the Legislature may enact laws and appropriate funds for the accomplishment of any public purpose. *Lenstrom v. Thone, supra*. L.B. 507 violates Neb. Const. art. III, §§ 1, 13, and 14, by attempting to restrict the constitutional power of a succeeding legislature to legislate.

An unconstitutional portion of a statute may be severed if (1) absent the unconstitutional portion, a workable statutory scheme remains; (2) the valid portions of the statute can be enforced independently; (3) the invalid portion was not an inducement to the passage of the statute; and (4) severing the invalid portion will not do violence to the intent of the Legislature. *State ex rel. Stenberg v. Murphy*, 247 Neb. 358, 527 N.W.2d 185 (1995); *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533 (1992). We find that L.B. 507 is not severable and is unconstitutional in its entirety.

## CONCLUSION

Having determined that L.B. 507 is unconstitutional for the reasons set forth above, we find that further consideration of the constitutionality of L.B. 507 under Neb. Const. art. III, § 22; Neb. Const. art. IV, § 15; and Neb. Const. art. II, § 1, is unnecessary. We also find it unnecessary to determine whether L.B. 507 was repealed by implication with the passage of L.B. 371 by the 94th Legislature.

Accordingly, it is the judgment of this court that L.B. 507 is unconstitutional and, thus, void and unenforceable.

JUDGMENT FOR RELATOR.

LANPHIER, J., concurring.

The majority holds that L.B. 507 violates the Nebraska Constitution. In so holding, the majority states that a legislature cannot restrict the constitutional power of a succeeding legislature to legislate. I agree that a legislature cannot limit the discretion of subsequent legislatures to revise, amend, or repeal an act. 1A Norman J. Singer, *Statutes and Statutory Construction* § 22.02 (5th ed. 1993). There are, however, qualifications. Succeeding legislatures *are* barred from interfering with contractual obligations already made even if they result from acts of a prior legislature. *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 283 N.W.2d 12 (1979). I fear the majority's use of broader language than is necessary may call into question the enforceability of valid obligations created by prior legislatures.

CAPORALE, J., joins in this concurrence.