REQUESTED BY: Frank J. Daley, Jr., Acting Executive Director Nebraska Accountability and Disclosure Commission
You have requested an Attorney General's Opinion concerning § 14 of LB 420, which was passed during the 1997 legislative session and which amends the Campaign Finance Limitation Act (CFLA) found at Neb. Rev. Stat. §§ 32-1601 through 32-1611. Your specific concern is whether this recent amendment may abridge the freedom of speech in violation of the First Amendment and be found unconstitutional. In the event we conclude that § 14 is unconstitutional, you also ask whether that section is severable from the remainder of LB 420.
As set out in your request, the purpose of the CFLA is to reduce spending in campaigns for certain offices by encouraging candidates to abide by voluntary spending limits. As an inducement, candidates who agree to abide by the spending limits are potentially eligible to receive public funds for use in their campaigns. In Op. Att'y Gen. No. 92120 we previously determined that the Act was not unconstitutional in relation to the questions which you raised at that time.
The recent amendment imposes new obligations on those persons who make independent expenditures. Section 14 of LB 420 provides that a person who intends to make independent expenditures of $2,000 or more during an election period, for or against a candidate seeking a covered elective office, must file a statement of intent to expend with the Nebraska Accountability and Disclosure Commission. That statement of intent must be filed no later than 45 days prior to the date of the election and must include certain information including the name of the candidate for which the independent expenditure is intended to be made and the maximum amount of independent expenditures the person intends to spend in support of or in opposition to that candidate.[1]
Section 14(2) further provides as follows:
 No person who has filed a statement of intent to expend shall make independent expenditures exceeding twenty percent more than the amount stated in subdivision (1)(e) of this section or less than twenty percent less than such amount. No person shall make independent expenditures for a covered elective office without filing a statement of intent to expend under this section.
Section 14 then allows a candidate to withdraw an affidavit of intent to abide by the spending limitations if independent expenditures are made in opposition to that candidate or on behalf of another candidate for the same office and if the candidate has not received public funds under the CFLA. You state in your request that a candidate who has pledged to abide by the spending limits was previously without the ability to respond to independent expenditures because the pledge to abide by the voluntary spending limits was irrevocable.
The definition of "independent expenditure" found at Neb. Rev. Stat. § 49-1428 has also been amended at § 16 of LB 420 as follows:
 Independent expenditure shall mean an expenditure as defined in section 49-1419 by a person if the expenditure is not made at the direction of, under the control of, or with the cooperation of another person and if the expenditure is not a contribution to a committee.
In Buckley v. Valeo, 96 S.Ct. 612 (1976), the United States Supreme Court addressed the potential infringement on First Amendment rights caused by requirements of the Federal Election Campaign Act of 1971 concerning contributions and expenditures. The Court concluded that the ceiling on independent expenditures, and certain other restrictions on campaign expenditures in the Act, imposed direct and substantial restraints on the quantity of political speech and the ability of candidates, groups, and citizens to engage in protected political expression, and were therefore violative of the First Amendment. Id. at 634. The expenditure ceilings at issue restricted certain individuals and groups to an expenditure of $1,000 per year relative to a clearly identified candidate and limited spending by candidates, their campaigns, and political parties in connection with election campaigns. The Court found that the governmental interest in preventing corruption and the appearance of corruption was inadequate to justify the ceilings on independent expenditures and also found that the expenditure ceilings were not necessary to prevent circumvention of the separate contribution limitations. Id. at 647.
The Buckley court also examined the disclosure requirements of the federal act and found that the provisions for disclosure by those who make independent contributions and expenditures, if narrowly construed, were within constitutional bounds. The Court stated that compelled disclosure can seriously infringe on privacy of association and belief guaranteed by the First Amendment, but acknowledged that there were governmental interests sufficiently important to outweigh the possibility of infringement. Id. at 656. Those governmental interests fell into three categories. The Court found that disclosure or reporting of contributions and expenditures provides the electorate with information as to where political campaign money comes from and how it is spent by the candidate, deters actual corruption and avoids the appearance of corruption and is a means of gathering the data necessary to detect violations of the Act.Id. at 657-8. The disclosure and reporting requirements survived strict scrutiny as the Court found they were narrowly drawn to serve compelling governmental interests.
The United States Supreme Court has subsequently reaffirmed these determinations. In FEC v. National Conservative PoliticalAction Committee, 470 U.S. 480, 105 S.Ct. 1459 (1985) the United States Supreme Court examined a federal statutory dollar limitation on independent expenditures by political committees. The Court found that the expenditures at issue in this case produced speech at the core of the First Amendment and that the governmental interest in preventing corruption or the appearance of corruption was not sufficiently strong to justify the expenditure limitations.
In Colorado Republican Campaign Committee v. FEC,116 S.Ct. 2309 (1996) the Court held that the First Amendment prohibits the application of a dollar limit provision to an expenditure that a political party has made independently, without coordination with any candidate. As stated by the Court at 116 S.Ct. 2315-6:
 Beginning with Buckley, the Court's cases have found a `fundamental constitutional difference between money spent to advertise one's views independently of the candidate's campaign and money contributed to the candidate to be spent on his campaign.' (citations omitted). This difference has been grounded in the observation that restrictions on contributions impose `only a marginal restriction upon the contributor's ability to engage in free communication. . . .'
 In contrast, the Court has said the restrictions on independent expenditures significantly impair the ability of individuals and groups to engage in direct political advocacy and `represent substantial . . . restraints on the quantity and diversity of political speech.' (quoting Buckley 96 S.Ct. at 635.) And at the same time, the Court has concluded that limitations on independent expenditures are less directly related to preventing corruption, since `[t]he absence of prearrangement and coordination of an expenditure with the candidate . . . not only undermines the value of the expenditure to the candidate, but also alleviates the danger that expenditures will be given as a quid pro quo for improper commitments from the candidate.' (quoting Buckley at 648).
In McIntyre v. Ohio Elections Commission, 115 S.Ct. 1511
(1995), the United States Supreme Court found unconstitutional an Ohio statute that prohibited anonymous campaign literature in that it abridged the freedom of speech in violation of the First Amendment. Although the State of Ohio contended that the Court had previously supported the constitutionality of disclosure requirements, the Court noted that, in Buckley, it had expressed approval of a requirement that independent expenditures in excess of a threshold level be reported to the Federal Election Commission, but that requirement required only an identification of the amount and use of money expended in support of a candidate and was far different from compelled self-identification in campaign literature. The Court noted that the Ohio statute's infringement on freedom of speech was more intrusive than the Buckley disclosure requirement and rested on different state interests.
The United States Supreme Court has thus distinguished expenditures from contributions and dollar limitations and other prohibitions from disclosure requirements. LB 420, § 14 is in one sense a disclosure provision, requiring the filing of a statement of intent to make an independent expenditure. However, the person who fails to timely file the statement of intent is then absolutely prohibited from making that independent expenditure. Section 14 also requires that the statement of intent set forth the maximum amount of independent expenditures the person intends to spend with regard to a covered elective office. The person who files the statement of intent as required more than 45 days prior to the election is then restricted in making independent expenditures to an amount not exceeding 20 percent more than the listed amount. Further, the person who timely files the statement of intent must then make the independent expenditure as planned and may not spend less than 20 percent less than the listed amount. While not an absolute prohibition or dollar limitation on independent expenditures as discussed in Buckley, § 14 appears more intrusive relative to First Amendment rights than a mere disclosure requirement with regard to expenditures previously made.
It is clear that independent expenditures are protected speech and that restrictions on those expenditures may infringe the freedom of speech and impinge on protected associational freedoms. A court would employ a strict scrutiny test in determining whether § 14 may be upheld as against constitutional challenge. "When considering whether a campaign finance law unconstitutionally infringes freedom of speech, this Court's task is to decide whether the provision in question actually `burdens the exercise of political speech and, if it does, whether it is narrowly tailored to serve a compelling state interest.'" Shrink Missouri Government PAC v. Maupin,71 F.3d 1422, 1424 (8th Cir. 1995) (citing Austin v. Michigan Chamber ofCommerce, 110 S.Ct. 1391 (1990).)
The state interests that provided the impetus for the enactment of the recent amendments to the CFLA are described at LB 420, § 2 as follows:
 The Legislature finds that there is a compelling state interest in preserving the integrity of the electoral process in state elections by insuring that these elections are free from corruption and the appearance of corruption and that this end can only be achieved if (a) reasonable limits are placed on the amount of campaign contributions from certain sources and (b) the sources of funding and the use of that funding in campaigns are fully disclosed.
As discussed previously, the United States Supreme Court has generally found that the governmental interest in preventing corruption or the appearance of corruption may be sufficient to justify a disclosure requirement, but is not sufficient to justify a ceiling on expenditures. These governmental interests have also been discussed in the recent Eighth Circuit case ofDay v. Holahan, 34 F.3d 1356 (8th Cir. 1994).
In Day, constitutional challenges were made to sections of the Minnesota campaign reform laws. The Minnesota statutory scheme included voluntary spending limits and eligibility for public subsidies with regard to campaigns. Among the 1993 changes and additions to the Minnesota campaign finance laws was a provision directed to independent expenditures. That provision was described by the Court of Appeals as follows:
 The candidate whose defeat is advocated (or whose opponent's election is encouraged) by the independent expenditure has her own expenditure limits increased by the amount of the independent expenditure (citation omitted). The Minnesota Ethical Practices Board then must pay her, if she is eligible to receive a public subsidy and has raised two times the minimum amount required for a match, an additional public subsidy equal to one-half the amount of the independent expenditure. Thus, by advocating a candidate's defeat (or her opponent's victory) via an independent expenditure, the individual, committee, or fund working for the candidate's defeat instead has increased the maximum amount she may spend and given her the wherewithal to increase that spending — merely by exercising a First Amendment Right to make expenditures opposing her or supporting her opponent. . . . To the extent that a candidate's campaign is enhanced by the operation of the statute, the political speech of the individual or group who made the independent expenditure `against' her (or in favor of her opponent) is impaired. Day at 1359-1360.
The Court held that the State of Minnesota failed to show that the statute at issue was narrowly drawn to serve a compelling state interest. One of the State's interests in Day was encouraging candidates to accept the voluntary campaign spending limits and the accompanying public subsidies. The Court of Appeals stated that it was "not certain" that this was a sufficiently compelling interest, but did not decide that issue because it held that, "with candidate participation and public campaign financing nearly 100 percent before enactment of § 10A.25 subd. 13, the interest, no matter how compelling in the abstract, is not legitimate." Day at 1361. The court also pointed out at footnote 6 of its opinion that the State's concern that candidate participation in publicly financed campaigns might be eroded without the new limits on independent expenditures was wholly speculative. The Court further found that the statute was not narrowly tailored to encourage participation in the public financing scheme by the non-participants. The Minnesota statute was, therefore, found to be unconstitutional.
The recent Nebraska amendment, of course, differs in some respects from the Minnesota statute found unconstitutional by the Eighth Circuit Court of Appeals. Under LB 420, § 14, the candidate whose defeat is advocated or whose opponent's election is encouraged by an independent expenditure does not automatically have her own expenditure limits increased by the amount of the independent expenditure, but is allowed to withdraw a previously filed affidavit of intent to abide by the voluntary spending limitations if the candidate has not received public funds under the act. Also, as distinguished from the Minnesota statute at issue in Day, the Nebraska statute does not provide for an additional public subsidy to the candidate negatively impacted by the independent expenditure. In fact, the Nebraska candidate who withdraws a previous affidavit to abide by the spending limits would then receive no public funds under the Campaign Finance Limitation Act. Nevertheless, it appears to us that a court could find that, to the extent that the candidate's campaign was enhanced by the operation of the statute in that the candidate was allowed to withdraw the previous affidavit of intent to abide by the spending limits, the political speech of the person who made the independent expenditure "against" that candidate would be impaired.
In addition, the Nebraska statute prohibits independent expenditures of more than $2,000 unless the person who wishes to make the independent expenditure files a timely statement of intent and restricts that person from subsequently spending more than 20 percent more than the amount listed in his statement of intent or less than 20 less than the listed amount. It appears that the person filing the statement of intent would be compelled to spend an amount within 20 percent of the dollar figure listed in his statement of intent even if circumstances changed and a candidate in question, for example, decided not to run for office or changed his position on certain issues after a statement of intent to expend was filed.
While we have found no case directly on point, we conclude for all of the reasons stated above that § 14 is unconstitutional. In this regard we note that, while in most constitutional challenges it is presumed that all acts of the Legislature are constitutional and all reasonable doubts are resolved in favor of constitutionality (In Re ApplicationsA-16027, et al., 242 Neb. 315, 495 N.W.2d 23, (1993), when a statute is contended to infringe on the exercise of First Amendment rights, the presumption is to the contrary and the burden of proof is shifted. The statute's proponent then bears the burden of establishing the statute's constitutionality.Acorn v. City of Frontenac, 714 F.2d 813, 817 (8th Cir. 1983).
To the extent that § 14 may be found unconstitutional, you also ask for our opinion whether that section is severable from the remaining provisions of LB 420. Assuming, arguendo, that the requirement of a statement of intent to expend were held unconstitutional as impermissibly burdening the freedom of speech, we believe the remaining provisions of the bill would be upheld. We first note that, whether reviewed by a state or federal court, the court would address the severability of § 14 under Nebraska law. See, Kinley Corp. v. Iowa UtilitiesBoard, 999 F.2d 354, 359 (8th Cir. 1993) (holding that questions regarding severability of state statutes are controlled by state law.)
Under Nebraska law, an unconstitutional portion of a statute "may be severed if (1) absent the unconstitutional portion, a workable statutory scheme remains; (2) the valid portions of the statute can be enforced independently; (3) the invalid portion was not an inducement to the passage of the statute; and (4) severing the invalid portion will not do violence to the intent of the Legislature." State ex rel. Stenberg v. Moore,249 Neb. 589, 595, 544 N.W.2d 344, 349. See, State ex rel. Stenberg v.Murphy, 247 Neb. 358, 527 N.W.2d 185 (1995); State ex rel.Spire v. Strawberries, Inc., 239 Neb. 1, 473 N.W.2d 428 (1991).
While a severability clause is not necessarily determinative of the question, it is an indication of legislative intent and we note that LB 420 contains a severability clause at § 24. Our review of LB 420 reveals that §§ 1-14 amend the Campaign Finance Limitation Act. Of those sections, §§ 1-13 primarily clarify the existing Act and the requirements for the affidavit to abide by the voluntary spending limits, the qualifications for public funds and the disbursement of public funds under that Act. The remaining sections of LB 420 amend accountability and disclosure commission provisions of Chapter 49 and primarily address reporting requirements, including a new reporting requirement for independent expenditures, and the general enforcement of both the Campaign Finance Limitation Act and the Nebraska Political Accountability and Disclosure Act.[2]
Applying the principles set forth by the Nebraska Supreme Court, we believe section 14 would be considered severable. The value and enforcement of the remaining portions of the bill are not dependent on the existence of the statement of intent to expend found at § 14.
Sincerely,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
APPROVED BY:
Don Stenberg
Attorney General
[1] We note that this section does not apply to an individual making independent expenditures with his or her own funds.
[2] This Opinion expresses no view as to the constitutionality of any section of LB 420 other than § 14.