REQUESTED BY: Senator David M. Landis
This opinion is written in response to your request for an opinion regarding the constitutionality of LB 452, introduced in the 1999 regular session and currently pending in the Education Committee.
You have asked two questions. You asked whether section 7 of LB 452 would violate the Nebraska Constitution's prohibition regarding the Legislature's binding of future Legislatures. Second, you asked whether LB 452 would violate the Nebraska Constitution's prohibition regarding the incurring of state indebtedness as provided in Article XIII, § 1.
 LB 452
LB 452 consists of ten sections. The Legislature's public interest goal is to enhance the credit ratings on bonds issued by Nebraska school districts, which would reduce the interest costs on the bonds and therefore reduce the amount paid by the local taxpayers.
The credit ratings on the bonds would be enhanced through a guarantee that the State Treasurer would make any bond payments not made by the school district. Under the bill, a paying agent who had not received a school bond payment by one business day prior to its due date, would be required to notify the State Treasurer. The State Treasurer would make the bond payment upon a determination that the school district would not make the payment by its due date, and would withhold the same amount from the next payment or payments of state aid due to the school district. In section 7, the State covenants with the purchasers and owners of bonds that it will not repeal, revoke, rescind, modify or amend LB 452 so as to limit or impair the rights and remedies granted therein. The last section of LB 452 provides that if any other section is declared invalid or unconstitutional, such declaration shall not affect the validity of the remaining portions.
 Legislature's Binding of Future Legislatures
The issue of one legislature binding or restricting future legislatures was first addressed by the Nebraska Supreme Court inState ex rel. Stenberg v. Moore, 249 Neb. 589, 544 N.W.2d 344
(1996). In that case the Legislature enacted a law (LB 507) which placed requirements on certain types of future legislation. If legislation was projected to increase total inmate population in Nebraska, then it was required to include cost-estimate provisions and a separate appropriations bill had to be enacted in the same legislative session. Any applicable legislation which did not contain these requirements would be null and void.
The Nebraska Supreme Court found that LB 507 violated Neb. Const. art. III, §§ 1, 13, and 14 by attempting to restrict the constitutional power of a succeeding legislature to legislate. Article III, § 1 provides, in relevant part:
 [T]he legislative authority of the state shall be vested in a Legislature consisting of one chamber. The people reserve for themselves, however, the power to propose laws, and amendments to the constitution, and to enact or reject the same at the polls, independent of the Legislature.
Article III, § 13 provides, in relevant part:
 No bill shall be passed by the Legislature unless by the assent of a majority of all members elected and the yeas and nays on the question of final passage of any bill shall be entered upon the journal.
Article III, § 14 provides, in relevant part:
 No bill shall contain more than one subject . . . No law shall be amended unless the new act contains the section or sections as amended and the section or sections so amended shall be repealed.
The supreme court based its decision on the Legislature's plenary authority to enact laws for the accomplishment of any public purpose not restricted by the Constitution.
 In Nebraska, the proposition that one legislature cannot bind a succeeding legislature is derived from the constitutional power of the Legislature to legislate. The Legislature has plenary legislative authority except as limited by the state and federal Constitutions . . . The Nebraska Constitution is not a grant, but, rather, is a restriction on legislative power, and the Legislature may legislate upon any subject not inhibited by the Constitution . . . Therefore, absent a constitutional restriction on the legislative power, one legislature cannot restrict or limit the right of a succeeding legislature to exercise the power of legislation.
State ex rel. Stenberg, 249 Neb. at 595, 544 N.W.2d at 349.
Section 7 of LB 452, in relevant part, states as follows:
 The state hereby covenants with the purchasers and owners of bonds and other obligations issued by school districts that it will not repeal, revoke, or rescind sections 1 to 9 of this act or modify or amend such sections so as to limit or impair the rights and remedies granted by such sections. . . .
It is our opinion that section 7 of LB 452 violates the Nebraska Constitution by restricting the constitutional power of a succeeding legislature to repeal, revoke, rescind, modify or amend LB 452. The Constitution has not restricted the right of the Legislature from legislating on the subject matter contained in LB 452. The current Legislature does not have the authority to restrict or limit the right of succeeding legislatures to exercise the power of legislation on the subject matter contained in LB 452. "`The authority of the legislature is limited to the period of its own existence. One general assembly cannot bind a future one.'" State ex rel. Stenberg, 249 Neb. at 594,544 N.W.2d at 348 (citation omitted).
"The general rule is set out in 82 C.J.S. Statutes § 9 at 24-25 (1953):
 `One legislature cannot bind a succeeding legislature or restrict or limit the power of its successors to enact legislation, except as to valid contracts entered into by it, and as to rights which have actually vested under its acts, and no action by one branch of the legislature can bind a subsequent session of the same branch. . . .'"
State ex rel. Stenberg, 249 Neb. at 593, 544 N.W.2d at 348.
 State Indebtedness in Excess of $100,000
Article XIII, § 1 of the Nebraska Constitution generally prohibits the state from incurring a debt exceeding of one hundred thousand dollars in the aggregate.
 The state may, to meet casual deficits, or failures in the revenue, contract debts never to exceed in the aggregate one hundred thousand dollars, and no greater indebtedness shall be incurred except for the purpose of repelling invasion, suppressing insurrection, or defending the state in war, and provision shall be made for the payment of the interest annually, as it shall accrue, by a tax levied for the purpose, or from other sources of revenue, which law providing for the payment of such interest by such tax shall be irrepealable until such debt is paid;. . . .
Neb. Const. art. XIII, § 1.
We have indicated previously that the term "debts," for purposes of Article XIII, § 1, may be defined as "any financial obligations contracted by the State in amounts exceeding one hundred thousand dollars to be repaid in future periods for which a current appropriation of funds has not been made." Op. Att'y Gen. No. 93071 (Sept. 1, 1993).
"`One purpose of the constitutional limitation upon state indebtedness is to prevent the anticipation of revenue by the creation of obligations to be paid from revenue to be received in future fiscal periods . . . Obligations which are to be paid from revenue subject to appropriation by future Legislatures are subject to the state debt limitation provision.'" State ex rel.Douglas v. Thone, 204 Neb. 836, 849, 286 N.W.2d 249, 255 (1979) (citing State ex rel. Meyer v. Steen, 183 Neb. 297,160 N.W.2d 164 (1968)).
"The general rule is that an obligation for which an appropriation is made at the time of its creation from funds already in existence, or for which definite provision has been made, is not within the operation of a limitation of indebtedness provision . . . However, a declaration of the Legislature for which money will or may in the future be expended is not an appropriation." State ex rel. Douglas, 204 Neb. at 850-51, 286 N.W.2d at . . .
Sections 4 and 7 of LB 452 are pertinent to the issue of state indebtedness. Section 4 states as follows:
 If the [school] district indicates that it will not make the payment by the date on which it is due, the State Treasurer shall forward the amount in immediately available funds necessary to make the payment of the principal of or interest on the bonds or other obligations of the school district to the paying agent and shall withhold such amount from the next succeeding payment of state aid pursuant to the Tax Equity and Educational Opportunities Support Act. If the amount of such next succeeding payment is insufficient to pay the amount necessary, the State Treasurer shall withhold amounts from each succeeding payment of state aid under the act, including payments to be made in succeeding fiscal years but not more than twelve months' worth of payments, until the total payment of principal and interest has been withheld. A school district which does not receive any state aid under the act does not qualify for state assistance in making timely payment of its bond or other obligations under sections 1 to 9 of this act.
Section 7 of LB 452, in relevant part, states as follows:
 [T]his section does not require the state to continue the payment of state aid to any school district or limit or prohibit the state from repealing, amending, or modifying any law relating to the amount of state aid to schools or the manner or timing of payment. Sections 1 to 9 of this act do not create a debt of the state with respect to such bonds or other obligations within the meaning of the Constitution of Nebraska and do not create any liability except to the extent provided in such sections.
LB 452 obligates the state to make a school district's bond payment upon a determination that the school district will not make the payment by the date on which it is due. No money is appropriated for this purpose. Section 4 requires the State Treasurer to use "immediately available funds," and the bill includes requirements for payments in succeeding fiscal years. Since there is no cap on the state's obligation to make a school district's bond payment, and the state is limited to withholding not more than twelve months' worth of state aid due to that school district, it is possible that the state may not recover all it has expended. Debt exceeding one hundred thousand dollars in the aggregate for which a current appropriation of funds has not been made violates Article XIII, § 1 of the Nebraska Constitution. Therefore, we believe this portion of LB 452 violates Article XIII, § 1 notwithstanding the language of section 7.
One could argue that the state has appropriated funds for this purpose through the appropriation of state aid pursuant to the Tax Equity and Educational Opportunities Support Act (TEEOSA). However, the language in section 4 of LB 452 indicates that the state aid appropriated to the school may be insufficient to cover the bond payment, and authorizes the State Treasurer to withhold TEEOSA payments from future fiscal years, up to twelve months' worth of payments. Therefore, even if one concludes that the state has appropriated funds to cover a bond payment through TEEOSA appropriations, LB 452 obligates the state to pay a school district's bond payment even when appropriated TEEOSA funds are insufficient to cover the bond payment.
Even though the state is not the primary obligor of the bonds, a secondary or contingent obligation is still subject to Neb. Const. art. XIII, § 1.
 The state is not to be the primary obligor on the bonds. However, previous opinions of this court, as well as the opinions of other courts which have had occasion to consider the question, make it very clear that even though the obligation of the state may be secondary or contingent, the obligation is nonetheless a debt within the meaning of Article XIII, section 1, Nebraska Constitution.
State ex rel. Douglas, 204 Neb. at 846, 286 N.W.2d at 254.
In your letter requesting an Attorney General's opinion, you asked us to address any other constitutional issues which deserve attention. In the course of our review we have found no other constitutional violations of LB 452.
Sincerely yours,
 DON STENBERG Attorney General
 Charlotte R. Koranda Assistant Attorney General
Approved by:
DON STENBERG
Attorney General
42-68-10.1