REQUESTED BY: Senator Pam Brown Nebraska State Legislature
This opinion is written in response to your request for an opinion regarding options available to the Legislature in reducing state aid to schools in a special session called for the purpose of cutting the state budget. You state that, through the passage of L.B. 543, the Legislature appropriated for the fiscal year 2001-2002 $635,488,575 from the general fund to the Tax Equity and Educational Opportunities Fund to be distributed as state aid to local school districts. You request a legal analysis as to the options available to the Legislature in passing legislation to reduce this amount.
Tax Equity and Educational Opportunities Support Act
The Tax Equity and Educational Opportunities Support Act ("TEEOSA") is the means under which local school districts receive state aid. TEEOSA is found at Neb. Rev. Stat. §§ 79-1001 to 79-1033 (Cum. Supp. 2000 
Supp. 2001). You ask that our decision include a review of TEEOSA and, in particular, § 79-1022 and § 79-1031.01. You ask whether certification of the amount of state aid creates an entitlement by school districts to this amount and limits the Legislature's ability to reduce it.
The methodology of TEEOSA is based on the legislative findings and intent outlined in Neb. Rev. Stat. § 79-1002 (Cum. Supp. 2000). In general, the Legislature stated the following in § 79-1002. The Legislature declared that public schools were financed too heavily by property taxes and not enough by state funds. The Legislature's goal in enacting TEEOSA was to reduce the reliance on property taxes, broaden the financial support for public schools and assure a greater level of equity in property tax rates and educational opportunities between school districts.
TEEOSA essentially requires the Nebraska Department of Education ("Department"), using the procedures set forth therein and the documentation provided to it by school districts and others, to annually arrive at a state aid figure for each local school system. Neb. Rev. Stat. § 79-1022 (Cum. Supp. 2000), the first statute to which you refer, requires the Department to certify its state aid figures by February 1 each year to the Director of Administrative Services, the Auditor of Public Accounts and to each school district. Section 79-1022
also requires the Department to report to the Governor and to the Legislature's Appropriations and Education Committees the amount of appropriations needed to fund the state aid figures it certified. Subsection (2) of § 79-1022 requires the state aid appropriated by the Legislature to be distributed in ten equal payments on the last day of the month beginning in September of each ensuing school fiscal year and ending in June the following year. If the monthly payment is less than one thousand dollars, the state aid is paid in one lump sum on the last business day of December. School districts are required, pursuant to subsection (2), to show the certified state aid figure as a budgeted non-property-tax receipt and to deduct the figure prior to calculating the property tax request in the district's general fund budget statement provided to the Auditor of Public Accounts.
The other statute to which you refer, Neb. Rev. Stat. § 79-1031.01
(Cum. Supp. 2000), requires the Appropriations Committee of the Legislature, by February 1 for each ensuing fiscal year, to annually include in its recommendations to the Legislature the state aid figures certified by the Department.
We have reviewed TEEOSA in its entirety and do not find any language which would limit the Legislature's ability to reduce the amount of state aid appropriated to schools in L.B. 543. We did find some language in § 79-1022 which seems to indicate that the amount certified will be the amount appropriated. "[T]he [D]epartment [of Education] shall determine the amounts to be distributed to each local system . . . and shall certify the amounts. . . ." Neb. Rev. Stat. § 79-1022(1) (Cum. Supp. 2000). "[T]he amounts certified pursuant to subsection (1) shall be distributed. . . ." Neb. Rev. Stat. § 79-1022(2) (Cum. Supp. 2000). However, the authority to appropriate money clearly lies with the Legislature. The Nebraska Constitution gives each Legislature the authority, if not the duty, to make appropriations for the expenses of government. "Each Legislature shall make appropriations for the expenses of Government." Neb. Const. art. III, § 22. "The Legislature has plenary or absolute power over appropriations. It may make them upon such conditions and with such restrictions as it pleases within constitutional limits." State ex rel. Meyer v. State Bd. of Equalization andAssessment, 185 Neb. 490, 500, 176 N.W.2d 920, 926 (1970).
In addition, if the Legislature intended, thru § 79-1022, to require each Legislature to appropriate the amount certified, it would be an unconstitutional attempt by one legislature to bind a future legislature. "The authority of the legislature is limited to the period of its own existence. One general assembly cannot bind a future one."'State ex rel. Stenberg v. Moore, 249 Neb. 589, 594, 544 N.W.2d 344, 348
(citation omitted). The Nebraska Supreme Court found in Stenberg that an attempt by one legislature to bind a future legislature violated Neb. Const. art. III, §§ 1, 13 and 14 "by attempting to restrict the constitutional power of a succeeding legislature to legislate." Id. at 595, 544 N.W.2d at 349.
However, under the rules of statutory construction, it is clear that § 79-1022 is not an unconstitutional delegation of the Legislature's authority to appropriate funds or an unconstitutional attempt by one legislature to bind a future legislature. The rules of statutory construction require us to take into consideration all of the statutes which compromise TEEOSA when determining the meaning of § 79-1022. "The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible." In re Estate ofMyers, 256 Neb. 817, 824, 594 N.W.2d 563, 568 (1999). "Statutes relating to the same subject matter will be construed to maintain a sensible and consistent scheme, so that effect is given to every provision." Deuth v.Ratigan, 256 Neb. 419, 425, 590 N.W.2d 366, 372 (1999). Considering TEEOSA in its entirety, it is clear that § 79-1022 was not an attempt to require that the amount certified be the amount appropriated. The Legislature's intent appears to be that the Department take the annual data it receives, apply the formulas set forth in TEEOSA and report the figures to the Legislature for its consideration.
You ask whether the certification creates an entitlement by the school districts to the amount certified and limits the Legislature's ability to reduce the amount. There are two instances under which one legislature can bind a succeeding legislature. The first is when a legislature enters into a valid contract and the other is when the acts of a legislature have created vested rights. An entitlement is a vested right. "`One legislature cannot bind a succeeding legislature or restrict or limit the power of its successors to enact legislation, except as to valid contracts entered into by it, and as to rights which have actually vested under its acts, and no action by one branch of the legislature can bind a subsequent session of the same branch. . . ."' Stenberg,249 Neb. at 593, 544 N.W.2d at 348 (citing C.J.S. Statutes § 9 at 24-25 (1953)).
It seems to us that certifications done pursuant to TEEOSA and, in particular, §§ 79-1022 and 79-1031.01, do not create an entitlement by the school districts to the amount certified for at least two reasons. First, "certify" is not defined in TEEOSA. It is used almost five hundred times throughout the Nebraska Revised Statutes. "Certify" as used in TEEOSA does not appear to have a meaning any different than that used elsewhere in Nebraska statutes. "In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; [we] will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous." CentralState Found. v. Balka, 256 Neb. 369, 374, 590 N.W.2d 832, 837 (1999). "Certify" in its plain, direct and unambiguous meaning means to represent in writing that something is true. See Black's Law Dictionary 118 (5th ed. 1983). A similar definition was used by the Nebraska Supreme Court concerning a letter of credit in Brown v. U.S. Nat'l Bank of Omaha,220 Neb. 684, 371 N.W.2d 692 (1985). Certification as used in § 79-1022
is an official written statement by the Department of Education as to the figures it obtained when it took the data provided to it and applied the formulas set forth in TEEOSA. In addition, certification as used in § 79-1031.01 is an official written statement by the Appropriations Committee of the Legislature, recommending to the entire legislative body, the amount of appropriations needed if it wants to fully fund state aid in a particular year as calculated under TEEOSA. Certifications under § 79-1031.01 only result in recommendations for funding levels to the Legislature as a whole. Each Legislature has the option of adopting those certifications or other levels of appropriations.
Other Statutes and the Nebraska Constitution
You also ask that we review any other relevant statutes that might limit the Legislature's ability to provide a reduction in the amount appropriated pursuant to TEEOSA. It is difficult to answer such a broad request. There are no other statutes of which we are aware that would limit the Legislature's ability to reduce the amount of state aid it appropriated for the current fiscal year. "'Under all constitutional governments recognizing three distinct and independent magistracies, the control of the purse strings of government is a legislative function.'"Meyer, 185 Neb. at 497-98, 176 N.W.2d at 925 (citing Colbert v. State,86 Miss. 769, 39 So. 65 (1905)).
We feel compelled to point out the Legislature's constitutional duty regarding public education in Nebraska. Neb. Const. art. VII, § 1
states that "[t]he Legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." Subject to this limitation, the Legislature is free, not only to select the method for financing public education, but also to select the amount of financing paid with state funds.
In conclusion, we have not found any statutes which would prevent or otherwise limit the Legislature's ability to change the amount of state aid previously appropriated to schools for the 2001-2002 fiscal year.
Sincerely,
 DON STENBERG Attorney General
 Charlotte R. Koranda Assistant Attorney General