REQUESTED BY: Frank J. Daley, Jr., Executive Director
Nebraska Accountability and Disclosure
You have requested an Attorney General's Opinion concerning the effect of a recent decision of the United States Supreme Court,Ariz. Free Enter. Club's Freedom Club PAC v. Bennett,131 S. Ct. 2806 (2011), on Nebraska's Campaign Finance Limitation Act. Neb. Rev. Stat. §§ 32-1601 to 32-1613 (2008 and Laws 2011, LB 142). In a 5-4 decision, the Court held that a matching funds provision of Arizona's public campaign funding law substantially burdened political speech and was not sufficiently justified by a compelling state interest. Therefore, the statutory scheme was found to violate the First Amendment. Your first question is whether the provisions of the Nebraska Campaign Finance Limitation Act relating to the distribution of public funds are constitutional underBennett. Your second question is whether the provisions of the Act relating to the aggregate contribution limits are constitutional under Bennett.[1] *Page 2 
In Bennett, the petitioners challenged the matching funds provision of the Arizona Citizens Clean Elections Act as a burden on their ability to fully exercise their First Amendment political speech rights. Under that Act, candidates for state office in Arizona may choose to voluntarily participate in that state's public financing system if they agree to accept certain campaign restrictions and obligations. Ariz. Rev. Stat. Ann. § 16-940 et seq.
(West 2006 and Supp. 2010). Those candidates who opt to participate are granted an initial outlay of public funds to conduct their campaigns; the amount of this funding depends upon the office sought. They may then receive additional public funding if certain conditions are met. In general, once a set spending limit is exceeded, the publicly financed candidates receive virtually one dollar for every dollar spent by a privately financed opponent and also receive virtually one dollar for every dollar spent by independent expenditure groups to either support the privately financed candidate or to oppose the publicly financed candidate. It is these matching funds provisions that the Court found unconstitutional.
The Court employed a strict scrutiny test in determining the constitutionality of the Arizona scheme. "`Discussion of public issues and debate on the qualifications of candidates are integral to the operation' of our system of government."Bennett at 2816-17 (quoting Buckley v. Valeo,424 U.S. 1, 14 (1976)). "`Laws that burden political speech are' accordingly `subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'"Bennett at 2817 (quoting Citizens United v. Federal ElectionComm'n, 130 S. Ct. 876, 882 (2010)).
The Court acknowledged that the speech of the candidates and independent expenditure groups was not directly capped by Arizona's matching funds provisions, but held that their speech was nevertheless substantially burdened. "The direct result of the speech of privately financed candidates and independent expenditure groups is a state-provided subsidy to a political rival."Id. at 2821. The Court then found that this burden was not justified by a compelling state interest, rejecting both the argument that the government has a compelling state interest in "leveling the playing field" and the argument that the matching funds provisions furthered the state's anticorruption interest.
1. Are the provisions of the Campaign Finance Limitation Actrelating to the distribution of public funds constitutional underthe above noted case?
Your request letter describes Nebraska's campaign public funding laws as follows:
 Under the CFLA, candidates for a "covered elective office" must formally choose to abide by the voluntary spending limits or choose not to abide by the voluntary spending limits. A non-abiding candidate must also file an estimate of his or her expenditures. An abiding candidate who raises and spends qualifying amounts *Page 3 
in accordance with a statutory formula (§ 32-1604(4)) becomes eligible for public funds.
 Public funds are distributed pursuant to the CFLA under two sets of circumstances. First, if the non-abiding candidate's estimate of expenditures exceeds the spending limit, public funds may be distributed to the qualified abiding candidate when the non-abiding candidate spends forty percent of the spending limit. The amount distributed would be the difference between the spending limit and the estimate of the non-abiding opponent. Second, if a non-abiding opponent spends more than the voluntary spending limit, the abiding candidate receives in public funds the difference between the voluntary spending limit and the amount of opponent spending
The Nebraska scheme is somewhat different from the Arizona public financing scheme which was found to be unconstitutional inBennett. For example, Nebraska provides no initial outlay of public funds to all candidates who opt to participate. Also, the distribution of public funds to abiding Nebraska candidates is not triggered by the spending of independent expenditure groups, a provision of the Arizona public financing scheme which particularly troubled the United States Supreme Court in Bennett.
Also, as you have recognized, the Court did not invalidate the public funding of campaigns per se. "We do not today call into question the wisdom of public financing as a means of funding political candidacy." Bennett at 2828. "We have said that governments `may engage in public financing of election campaigns' and that doing so can further `significant governmental interest[s]' such as the state interest in preventing corruption."Id. at 2828 (quoting Buckley,424 U.S. at 57, n. 65, 92, 93, 96.)
Yet, the distribution of public funds to participating candidates under the Nebraska Act is triggered by the expenditures of privately financed candidates as was the award of additional public funds under the Arizona scheme. The Court found that such a provision "plainly forces the privately financed candidate to `shoulder a special and potentially significant burden' when choosing to exercise his First Amendment right to spend funds on behalf of his candidacy" and that "a candidate or independent group might not spend money if the direct result of that spending is additional funding to political adversaries." Bennett at 2818, 2823. For these reasons, we think it is likely that the matching funds provisions of the Nebraska Act would also be found to impose a substantial burden on the speech of privately financed candidates.
Employing a strict scrutiny test as in Bennett, a court would then determine whether the Nebraska matching funds provision is justified by a compelling state interest. The state interests expressed at Neb. Rev. Stat. § 32-1602 are increasing the number of candidates able to run for office and "preserving the integrity of the electoral process in state elections by ensuring that these elections are free from corruption and *Page 4 
the appearance of corruption. . . ." The Court, in Bennett, held that neither a state's interest in equalizing electoral opportunities nor a state's interest in combating corruption justified the burden imposed on privately financed candidates by the Arizona matching funds provisions. In our view, a court would likely reach the same conclusion with regard to the Nebraska public financing statutes and find them unconstitutional.
2. Are the provisions of the Campaign Finance Limitation Actrelating to the aggregate contribution limits constitutional underthe above noted case?
Neb. Rev. Stat. § 32-1608 is the provision which concerns aggregate contribution limits. It provides, as is pertinent, that "[D]uring the election period, no candidate for a covered elective office shall accept contributions from independent committees, businesses, including corporation, unions, industry, trade, or professional associations, and political parties which, when aggregated, are in excess of fifty percent of the spending limitation for the office set pursuant to section 32-1604."[2]
Because the petitioners in Bennett challenged the matching funds provisions of the Arizona statutes, the United States Supreme Court did not specifically address aggregate contribution limits. However, if a court should find the public financing provisions of Nebraska's Campaign Finance Limitation Act violative of the First Amendment pursuant to the Bennett decision, it would then need to determine whether those statutes providing for the distribution of public funds to candidates are severable such that § 32-1608 or any other remaining provisions of the Act remain in full force and effect.
Under Nebraska law, an unconstitutional portion of a statute "may be severed if (1) absent the unconstitutional portion, a workable statutory scheme remains; (2) the valid portions of the statute can be enforced independently; (3) the invalid portion was not an inducement to the passage of the statute; and (4) severing the invalid portion will not do violence to the intent of the Legislature." State ex rel. Stenberg v. Moore,249 Neb. 589, 595, 544 N.W.2d 344, 349 (1996).
While a severability clause is not necessarily determinative of the question, it is an indication of legislative intent. "Such a clause is an aid to interpretation, and is a declaration of the intent of the Legislature that it would have passed the Act with the invalid parts omitted." State ex rel. Meyer v. Duxbury,183 Neb. 302, 310, 160 N.W.2d 88, 94 (1968). The Campaign Finance Limitation Act, as originally enacted in 1992, did not include a severability clause. Laws 1992, LB 556. *Page 5 
We have reviewed the legislative history of LB 556 to determine whether the potentially invalid provisions concerning the distribution of public funds were an inducement to the passage of the Act as a whole. The legislative history reflects the legislature's intent to both control campaign costs to encourage more candidates to run and decrease reliance on large contributors.Committee Records on LB 556, 92nd Leg., 1st Sess. (Introducer's Statement of Intent) (February 14, 1991). Senator Baack, the introducer of LB 556, initially described the contribution restrictions of the bill and the spending or financing provisions of the bill as two separate concepts. "It (the bill) has some financing provisions and it also has some contribution provisions and they are definitely two different, two different sections of the bill. And they are not necessarily . . . one doesn't have to take place for the other one to go into effect. . . ." Committee Records on LB 556 at 7. Our review of the legislative history reveals that the section concerning aggregate contribution limits was at one time removed from the bill because of opposition to it. FloorDebate on LB 556, 92nd. Leg., 2nd
Sess. 11119, 11121 (March 23, 1992). An amendment was later adopted to restore the aggregate contribution limits. Floor Debate on LB556 at 11125. It appears a colorable argument could be made that the public financing provisions were not an inducement to the passage of the aggregate contribution limit provision.
However, the question remains whether, in the absence of the public financing provisions, the aggregate contribution limits statute could be enforced independently. In this regard, we note that the language of § Attorney General 32-1608 includes specific references to § 32-1604, a statute pertaining to the public financing scheme. In addition, the aggregate contribution restrictions of § 32-1608 apply only to candidates for "covered elective offices", that is, those state offices designated by the Nebraska Accountability and Disclosure Commission as being eligible for public financing in a given election period. Neb. Rev. Stat. §§ 32-1603, 32-1604 and 32-1611. Further, the contribution limits of § 32-1608 depend upon the spending limitations set forth in § 32-1604 as part of the public financing scheme. This dependence of § 32-1608 on statutory provisions relating to public financing weighs against severability of the public financing provisions should those provisions be held unconstitutional. Thus, a court could well conclude that § 32-1608 is not an independent workable statute.
For the reasons outlined above, we conclude that a court employing the analysis set forth in Bennett would likely find the public financing provisions of the Act to be unconstitutional. In that event, because the statute pertaining to aggregate contributions limits is interwoven with the public financing provisions, a court could find that the invalid provisions are not severable and that § 32-1608 cannot be enforced independently. *Page 6 
Sincerely,
 JON BRUNING Attorney General
 Lynn A. Melson Assistant Attorney General
Approved by:
 ___________________________ Attorney General
[1] We note that you have asked specifically about the possible effect of this particular Supreme Court decision on Nebraska's Campaign Finance Limitation Act and we have limited our inquiry to your specific concerns.
[2] As you note in your request, the fifty percent aggregate contribution limit is soon to rise to seventy-five percent pursuant to Laws 2011, LB 142. *Page 1